154 P.3d 243 (2007)
STATE of Washington, on behalf of J.V.G., child, Petitioner,
v.
Jon F. VAN GUILDER, Appellant,
v.
Jennifer Ann Van Guilder, Respondent.
No. 57490-6-I.
Court of Appeals of Washington, Division 1.
March 5, 2007.
*244 Patricia S. Novotny, Attorney at Law, Seattle, WA, for Appellant.
H. Michael Fields, Attorney at Law, Seattle, WA, for Respondent.
AGID, J.
¶ 1 Jon and Jennifer Van Guilder are the divorced parents of J.V.G. Jon remarried and has four additional children. The State of Washington petitioned for modification of Jon's child support obligation to J.V.G. because he could not meet that obligation and the needs of his four other children from his second marriage. The State requested that Jon's monthly support obligation be reduced from $905 to $302. Jennifer opposed the downward deviation and petitioned for Jon to pay his proportional share of J.V.G.'s private school tuition and extracurricular activities in addition to his basic support obligation. The trial court found in favor of the mother and increased the father's monthly support payment to $1,216. We hold that the trial court abused its discretion by failing to consider the total financial circumstances of both households in denying the downward deviation and requiring the father to pay for private school without making a finding that he could afford to do so. We reverse and remand.

FACTS
Dissolution and Child Support Order
¶ 2 A California court dissolved Jon and Jennifer Van Guilder's marriage in 1995, when their son, J.V.G., was three years old. Under the 1995 order, the court gave Jennifer primary physical custody and visitation to Jon. The court ordered Jon to pay a total of $905 monthly in child support. His original monthly support payment was $655 plus an additional $250 for daycare expenses. Jon remarried and has four other children with his current wife, a stay-at-home mother. He and his second family live in Ohio.
2002 Parenting Plan
¶ 3 In 2002, Jennifer petitioned for modification of the 1995 parenting plan, alleging that Jon and his current wife abused J.V.G., causing him emotional harm. At the time, Jon was moving to the Midwest with his second family and did not appear at the hearing. The court heard testimony from Jennifer, J.V.G.'s therapist, and a family observer. It granted the modification, giving *245 Jennifer sole decision-making authority and requiring that Jon's visits be supervised until he and his wife submitted to an anger management and domestic violence assessment. Jennifer did not attempt to modify Jon's child support obligation at this hearing. Jon did not appeal the order. J.V.G. attends regular counseling sessions to deal with his emotional problems.
Private School Education
¶ 4 J.V.G. has always attended private school. Both parents chose to send him to Providence Classical Christian School (PCCS), a private school. After PCCS relocated from Bellevue to Bothell, Jennifer decided to move J.V.G. to a more expensive private school closer to her home. Apparently, J.V.G.'s counselor teaches at the new school and recommended it to Jennifer.[1] No court has ever required John to pay for J.V.G. to attend private school.[2]
Procedural History
¶ 5 At some point Jon fell behind in his child support payments for J.V.G., and the State began collecting his payments and arrearages. On June 24, 2005, the State filed a petition to modify Jon's child support obligation to J.V.G. based on his changed financial situation as a result of his four additional children. The State recommended a downward deviation from the standard obligation to $302 monthly based on the "whole family" formula. On June 29, 2005, Jennifer filed a motion for adjustment, seeking an increase in Jon's support payments to cover his proportional share of J.V.G.'s tuition and extracurricular activities. She failed to timely serve the State with her motion for adjustment. The family court commissioner dismissed the motion and directed the parties to deal with both the downward deviation and the request for private school tuition at the modification hearing in the form of trial by affidavit.
¶ 6 Jennifer submitted an affidavit asserting that Jon should contribute to J.V.G.'s private school tuition, counseling, and extracurricular activities because they were necessary given his history of participating in such activities and his emotional problems stemming from abuse by his father. Jon, appearing pro se telephonically from Ohio, opposed the increase and asked for a downward deviation based on his financial circumstances. The State presented its original request for a downward deviation based on Jon's additional four children but did not advocate on his behalf, choosing instead to defer to the court on all issues.
¶ 7 The commissioner pro tem denied Jon's request for a downward deviation because it "would leave insufficient funds in the custodial parent's household" and ordered him to pay $1,216 in monthly child support for J.V.G. The court based this $311 increase in the father's monthly support payments on his proportional half of J.V.G.'s private school tuition and extracurricular activities. The court calculated the father's basic monthly child support obligation at $666 and his proportional share of J.V.G.'s tuition and extracurricular activities at $550. The court found that this extra expense was justified by J.V.G.'s history of private school attendance, his mother's sole decision-making authority, and her affidavit stating that his counselor recommended the school. The court denied the mother's request that Jon contribute to J.V.G.'s counseling, stating that it is part of ordinary monthly health care.
¶ 8 While Jennifer supports herself and J.V.G. on $5,000 a month, Jon makes approximately $5,541 monthly and must support four other children and his wife on that salary. Jon submitted a number of financial documents to show the financial hardship the court's failure to grant a downward deviation would impose on his second family. The court made no findings about how these increased child support payments would affect Jon's other children or whether Jon could afford to pay for private school and extracurricular activities given his other obligations. The superior court denied Jon's motion seeking revision of the commissioner pro tem's ruling. Jon appeals.

*246 DISCUSSION
¶ 9 Generally, we review the superior court's ruling, not the commissioner's.[3] But when the superior court denies a motion for revision, it adopts the commissioner's findings, conclusions, and rulings as its own.[4] We review a trial court's child support determinations for abuse of discretion.[5] A trial court abuses its discretion by making a decision based on "`untenable grounds or for untenable reasons.'"[6] A trial court does not abuse its discretion where the record shows that it considered all the relevant factors and the child support award is not unreasonable under the circumstances.[7] Findings of fact supported by substantial evidence, i.e., evidence sufficient to persuade a rational person of the truth of the premise, will not be disturbed on appeal.[8]
I. Downward Deviation
¶ 10 A trial court may deviate from the standard child support calculation based on one parent's financial obligations to children from another relationship who live with him, provided he is fulfilling his obligations to them.[9] Under RCW 26.19.075(1)(e)(iv), when a parent has children from another relationship, the court must consider the "total circumstances of both households" in deciding whether a deviation is appropriate. When a court chooses to grant or deny a request for deviation, it must provide "`specific reasons'" for its decision in written findings of fact, and those findings must be supported by substantial evidence.[10]
¶11 Here, the trial court denied the father's request for a downward deviation because it found that reducing his support payments from the standard calculation of $666 to the State's proposed $302 "would leave insufficient funds in the custodial parent's household." The father challenges this ruling, arguing that its factual underpinnings are not based on substantial evidence and that the trial court abused its discretion by failing to consider the total circumstances of both households.
¶ 12 The father relies on our holding in In re Marriage of Bell that a court abuses its discretion when it allows earlier child support orders to determine the amount of support to which later-born children are entitled.[11] In Bell, we stated that "[c]hild support is not a first-come, first-served proposition."[12] Even though there is no explicit requirement that the trial court treat each child equally, it violates the purpose of the child support statute to create a situation where earlier-born children receive substantially more support than later-born children by virtue of an earlier child support order.[13] The mother argues that Bell is factually distinguishable from this case because it involved a support order for later-born children based on a pre-existing support order for children from an earlier relationship and none of the children lived with the parent requesting the downward deviation.[14] These are distinctions without a difference. The underlying policy *247 of the child support statute as explained in Bell is that courts must consider the total circumstances of both households, without giving priority to certain children based on birth order. That principle applies equally to the facts of this case. Certainly the fact that the father's four other children live with him does not somehow negate his support obligation to them.[15]
¶ 13 It is clear from the record that the trial court did not consider the total circumstances of both households before denying the father's request for a downward deviation. In fact, the court implied that the issue of how much support J.V.G. is entitled to is completely separate from the issue of how much support the other four children will receive. When the father tried to explain the hardship an increase in his support payments would work on his second family, the court replied:
"Well, Mr. Van Guilder, both you and your current wife have an obligation to support the children you have, and you have . . . an independent obligation to support the child you have with [J.V.G.]'s mother."
This statement runs contrary to the statute and our holding in Bell that courts must consider the needs of all the children to whom the parent seeking deviation owes a duty of support.[16]
¶ 14 The court also appears to have based its finding that a downward deviation would leave insufficient funds in the mother's household on inappropriate evidence. RCW 26.19.075(1)(e) does not mention insufficient funds in the custodial parent's household as a limiting factor in the deviation determination. Subsection (1)(d) of that statute is the only place where such a limitation is discussed and it qualifies that limitation, stating that a deviation is inappropriate if it "will result in insufficient funds in the household receiving support to meet the basic needs of the child."[17] Reading the subsections together and considering the legislature's intent that child support orders be "adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living,"[18] we hold that, when considering the total circumstances of both households, a court should first consider whether the basic needs of all the children can be met.
¶ 15 The trial court should only have considered whether the deviation would result in insufficient funds to meet J.V.G.'s basic needs. Instead the court appears to have based its determination largely on J.V.G.'s statutorily-extraordinary need to attend private school:
And that's my finding today is that if I were to deviate, it would, uh?it would leave insufficient funds. I did review the mother's financial declaration.
Uhm, she does have a pretty significant cost for education expenses but, again, that was based on the parties having previously agreed and mother now having sole decision-making.
The mother's private school tuition payments should not have been considered as part of the deviation determination because such payments are extraordinary expenses not considered part of the standard child support calculation.[19] In Yeamans v. Knowles, we clearly stated that the appropriate procedure for determining the allocation of extraordinary expenses requires first determining whether a deviation is justified and then applying that deviation proportionally to any approved extraordinary expenses.[20] A court cannot properly consider extraordinary expenses as part of the deviation determination.[21] We hold that the pro tem commissioner and the trial court abused their discretion by failing to consider the total circumstances of both households and inappropriately basing the deviation determination *248 on an extraordinary tuition expense rather than on whether the lesser amount would still be sufficient to meet J.V.G.'s basic needs. We remand this case for a determination of whether a downward deviation is warranted under RCW 26.19.075(1)(e)(iv), based on the total circumstances of both households and considering the basic needs of all five children.
II. Private School Tuition and Extracurricular Expenses
A. Effect of Father's Request for a Downward Deviation
¶ 16 The father argues he should not be obligated to pay the extraordinary expenses of private school tuition and extracurricular activities when he is requesting a downward deviation because he cannot afford to meet even his basic child support obligations. Under RCW 26.19.080(3), private school tuition and "special child rearing expenses" are extraordinary expenses not included in the basic child support calculation. The trial court has discretion to determine the "necessity for and reasonableness of" payments in excess of the basic child support obligation.[22] RCW 26.19.080(3) requires that extraordinary expenses "shall be shared by the parents in the same proportion as the basic child support obligation." In Yeamans, we held that "[o]nce the trial court determines that extraordinary expenses are `reasonable and necessary,'" it is required to allocate them proportionally.[23] We reversed an order that denied the mother's request for a downward deviation in her basic support obligation but forced the father to pay for 100 percent of the child's extraordinary travel expenses.[24] The remand required the trial court to reconsider the deviation determination and reallocate the extraordinary expenses accordingly.[25] The same considerations apply here. If, on remand, the lower court finds a downward deviation is justified under RCW 26.19.075(1)(e)(iv), it must proportionately decrease any extraordinary expense allocation it deems reasonable and necessary.
B. Ability to Pay
¶ 17 In In re Marriage of Stern, we held that a noncustodial parent should not be obligated to pay for private school when acceptable public schools are available unless there is a "showing of special circumstances justifying the need for private school education."[26] We provided a non-exclusive list of factors that might justify an award of tuition expenses, including "family tradition, religion, and past attendance at a private school."[27] In In re Marriage of Vander Veen, this court held that including private school tuition as part of child support was justified because the Stern factors were present: the family had a tradition of attending Christian schools, the parents had agreed to send their children to Christian school, and the children had always attended Christian school.[28]
¶ 18 The father contends that his ability to pay for private school and extracurricular activities must be taken into consideration as part of the court's determination about the "reasonableness" and "necessity" of such extraordinary expenses,[29] essentially asking that we add an "ability to pay" prong to the Stern test. Stern and Vander Veen are the only published Washington cases that address the issue of a noncustodial parent's obligation to pay for private schooling. The ability to pay for such schooling was not at issue in either case. But we based our holding in Stern largely on In re Marriage of Aylesworth, a California case that held a court does not abuse its discretion by ordering a parent to pay for private school where there is substantial evidence of the child's *249 need for public schooling and the objecting parent's ability to pay for it.[30]
¶ 19 We have required consideration of a parent's ability to pay in a similar context. In In re Marriage of Shellenberger, we cited Stern and Vander Veen as support for the proposition that a "trial court should not require objecting parents of modest means to pay for private college where the child can obtain a degree in his or her chosen field at a publicly subsidized institution."[31] In Shellenberger, we held that the lower court abused its discretion by failing to make findings about the father's ability to pay college tuition while still meeting the support needs of his minor child from another relationship.[32] Although Shellenberger dealt with post-secondary education, its policy considerations are equally applicable here. Requiring the trial court to make findings about a parent's ability to pay for extraordinary expenses whenever the objecting parent raises the issue is consistent with the legislative intent of the child support statutes that support orders be "adequate to meet a child's basic needs" and that additional support be ordered only when it is "commensurate with the parents' income, resources, and standard of living."[33]
¶ 20 Because Yeamans requires that extraordinary expenses be allocated in the same manner as the basic support obligation,[34] part of determining which extraordinary expenses will be allowed must involve a determination of the objecting parent's ability to pay. The court cannot bleed a stone. But that is the result of support orders which require payment of extraordinary expenses beyond a parent's means. If a court determines that a parent can only afford to contribute to 25 percent of his child's basic support needs, it is unlikely that he will be able to afford 25 percent of any additional extraordinary expenses on top of his basic support obligation. We hold that part of a trial court's determination that extraordinary expenses are reasonable and necessary must involve a finding about the parent's ability to pay when that issue is raised. Even if the trial court finds that there is sufficient evidence of J.V.G.'s need for private schooling, the inquiry cannot end there. On remand, the lower court must consider whether the father can afford to pay for private school before ordering him to do so.
III. Attorney Fees
¶ 21 The father seeks attorney fees under RAP 18.1 and RCW 26.09.140, which authorizes the appellate court to order one party to pay the other's reasonable attorney fees based on the requesting party's demonstrated financial need and the other party's ability to pay.[35] Here, the parties' incomes are similar. While the father has established a need for attorney fees, he has not established that J.V.G.'s mother has the ability to pay his fees. Accordingly, we deny the father's request for attorney fees.
¶ 22 We reverse and remand. On remand, the trial court is to consider the total circumstances of both households in determining whether a downward deviation in the father's basic support obligation is appropriate under RCW 26.19.075(1)(e)(iv). It must also determine whether he has the ability to pay for private school and extracurricular activities as part of deciding whether these extraordinary expenses are necessary and reasonable under RCW 26.19.080(4).
WE CONCUR: DWYER and GROSSE, JJ.
NOTES
[1] This is based solely on the mother's affidavit.
[2] Private school was not included in the original support order.
[3] In re Marriage of Stewart, 133 Wash.App. 545, 550, 137 P.3d 25 (2006) (citing In re Marriage of Dodd, 120 Wash.App. 638, 644, 86 P.3d 801 (2004)).
[4] RCW 2.24.050; In re Estate of Larson, 36 Wash.App. 196, 200, 674 P.2d 669 (1983), rev'd on other grounds, 103 Wash.2d 517, 694 P.2d 1051 (1985).
[5] In re Marriage of Stern, 57 Wash.App. 707, 717, 789 P.2d 807 (citing In re Marriage of Nicholson, 17 Wash.App. 110, 119, 561 P.2d 1116 (1977)), review denied, 115 Wash.2d 1013, 797 P.2d 513 (1990).
[6] In re Marriage of Vander Veen, 62 Wash.App. 861, 867, 815 P.2d 843 (1991) (quoting Coggle v. Snow, 56 Wash.App. 499, 507, 784 P.2d 554 (1990)).
[7] Stern, 57 Wash.App. at 717, 789 P.2d 807.
[8] Id.
[9] Fernando v. Nieswandt, 87 Wash.App. 103, 111, 940 P.2d 1380, review denied, 133 Wash.2d 1014, 946 P.2d 402 (1997).
[10] In re Marriage of Bell, 101 Wash.App. 366, 371, 4 P.3d 849 (2000) (quoting RCW 26.19.075(2)).
[11] 101 Wash.App. 366, 373, 4 P.3d 849 (2000).
[12] Id.
[13] Id.
[14] Id. at 371, 4 P.3d 849.
[15] Fernando, 87 Wash.App. at 111, 940 P.2d 1380.
[16] 101 Wash.App. at 373, 4 P.3d 849.
[17] RCW 26.19.075(1)(d) (emphasis added).
[18] RCW 26.19.001.
[19] RCW 26.19.080(3).
[20] 117 Wash.App. 593, 601, 72 P.3d 775 (2003).
[21] Id.
[22] RCW 26.19.080(4).
[23] 117 Wash.App. at 600, 72 P.3d 775 (quoting Murphy v. Miller, 85 Wash.App. 345, 349, 932 P.2d 722 (1997)).
[24] Id. at 601, 72 P.3d 775.
[25] Id. at 601-02, 72 P.3d 775.
[26] 57 Wash.App. 707, 720, 789 P.2d 807, review denied, 115 Wash.2d 1013, 797 P.2d 513 (1990).
[27] Id.
[28] 62 Wash.App. 861, 866, 815 P.2d 843 (1991).
[29] RCW 26.19.080(4).
[30] Stern, 57 Wash.App. at 718-19, 789 P.2d 807 (citing Aylesworth, 106 Cal.App.3d 869, 878, 165 Cal.Rptr. 389, 394 (1980)).
[31] 80 Wash.App. 71, 85, 906 P.2d 968 (1995).
[32] Id. at 84, 906 P.2d 968.
[33] RCW 26.19.001.
[34] 117 Wash.App. at 601, 72 P.3d 775.
[35] In re Marriage of Kimpel, 122 Wash.App. 729, 735, 94 P.3d 1022 (2004), amended on recons., 2004 Wash.App. LEXIS 2939 (Dec. 2, 2004).