FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8: 47

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 42953-5-II |
| SUZANNE PAULSEN, | |
| Respondent, | |
| v. | |
| TIMOTHY PAULSEN, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Timothy Paulsen appeals several provisions of the trial court's parenting plan, order of child support, spousal maintenance and attorney fees awards, and its finding of contempt in his dissolution proceeding against Suzanne Paulsen. Timothy[1] argues that the trial court abused its discretion when it (1) imposed restrictions on Timothy's residential time with his children, (2) granted Suzanne sole decision making for the children's religious upbringing, (3) relied on the guardian ad litem's (GAL) recommendations, (4) considered fault in dividing the couple's debts and assets, (5) calculated the parties' income for child support purposes, (6) ordered Timothy to pay maintenance to Suzanne, (7) ordered Timothy to pay

---

[1] We refer to the parties by their first name for clarity, intending no disrespect.

Suzanne's attorney fees, and (8) found Timothy in contempt for failure to pay court-ordered child support.

We hold that the trial court did not abuse its discretion when it imposed restrictions on Timothy's residential time with his children and gave Suzanne sole decision-making authority for the children's religious upbringing. There is substantial evidence that Timothy's use of religion to manipulate children and his past sexual abuse of minors posed a serious risk of actual or potential harm to the children. Additionally, because there is no evidence that the trial court considered anything improper and because there is substantial evidence to support the trial court's ruling, we conclude that the trial court did not abuse its discretion when it divided the parties' debts and assets, calculated their income for child support, ordered Timothy to pay spousal maintenance, and ordered him to pay Suzanne's attorney fees. Finally, the trial court did not abuse its discretion when it found Timothy in contempt for failing to pay previously ordered child support because inability to pay is not, in itself, a sufficient argument against disobeying a lawful court order. Accordingly, we affirm.

FACTS

Timothy and Suzanne were married in 1992 and separated in 2009. In 2010, Suzanne filed a petition for dissolution. Their marriage produced three children, ages 11, 9, and 6 at the time of filing. Before trial, the court appointed a GAL to investigate allegations of physical/sexual abuse of the children by Timothy and the parenting abilities of both parents. Among other things, the GAL investigated allegations that Timothy had several inappropriate relationships with teenagers during the marriage. In her report, the GAL explained her belief that Timothy had a history of severely abusing his position of trust as a teacher to manipulate impressionable teenagers, failed to respect boundaries, and engaged in sexually deviant behavior.

Ultimately, the GAL recommended that Suzanne have primary custody of the children and that Timothy's residential time consist solely of professionally supervised visits. At the time of trial, a parenting plan, child support, the couple's division of debts and assets, and spousal maintenance were all at issue.

The trial court heard testimony from several witnesses about Timothy's prior relationships with several of his students. One witness, R.B., testified that he met Timothy when Timothy was his seventh grade physical education teacher. Timothy invited R.B. to "overnighters" at his home, wanted to become his mentor, and wanted to make his home a second home for R.B. because R.B.'s parents were going through a divorce. Timothy and R.B. spent significant time together, regularly wrestled, and had "[a] lot of physical touch" between them. 2 Report of Proceedings (RP) at 154. Starting when R.B. was in ninth grade, R.B. believed there was a "crossing of boundaries" with respect to nudity, and Timothy engaged in several more "overt sexual contact[s]" including touching R.B.'s genitals. 2 RP at 168, 171. Timothy's sexual touching of R.B. continued until R.B. was 16 or 17 years old.

Another witness, A.D., testified that she met Timothy when she was 13 on a junior high field trip; Timothy was one of the teacher supervisors on the trip. Timothy started his relationship with A.D. talking to her about the trouble she was having with her parents, and she began spending a lot of time alone with him. A.D. spent the night at the Paulsen home on a regular basis during junior high and high school. She and Timothy often wrestled. She also testified about "encouragement letters" that Timothy wrote to her, similar to the letters that he had written to R.B. After she graduated from high school, her relationship with Timothy changed, progressing to sexual intercourse. A.D. testified that beginning when she was 13, she

3

felt that Timothy sexually groomed and manipulated her. She also testified that she had seen Timothy wrestle with his children in the same way he wrestled with her.

Jennifer Knight, a therapist who met with Suzanne, Timothy, and their children, testified that she believed that Timothy engaged in classic sexual abuse grooming behaviors of children and used religion as a grooming technique—citing scripture, telling children how much he thanked the Lord that the children were in his life, and praying to God on their behalf. Knight explained that grooming was the practice of suffocating a child with overbearing communication, such as saying, "I love you" over and over, making the child become dependent on the person. 1 RP at 130. Knight believed Timothy posed a threat to the safety and well-being of his own children, and his use of religion was a major concern because Timothy used religion to weaken the defenses of children, and his own children expressed that they were uncomfortable praying with him.

Dr. Allen Traywick, a psychologist who evaluated Timothy to determine whether Timothy was sexually deviant and a risk to his children, testified that Timothy admitted to sexually abusing R.B. Dr. Traywick also testified that Timothy told him he resigned from his teaching job because a student's parents accused him of "grooming" children. Timothy told Dr. Traywick that he used religion as a grooming technique, that someone reported him to the police, and that the school district investigated him after a third boy's parents found letters Timothy had written to him. Ultimately, Dr. Traywick did not believe that Timothy was sexually dangerous to his own children because he had shown remorse for his actions and had undergone counseling.

The GAL testified about her investigation and her concern with Timothy's parenting. One of her major concerns was Timothy's use of religion and that his religious grooming

practices had been the subject of several disciplinary actions by the school district. She also believed that Timothy's use of religion was emotionally damaging to his own children.

Suzanne testified that she had been a full-time school teacher, but stopped working after their second child was born to raise their children and home school them. When she did so, her public school teacher certification lapsed.

Suzanne and Timothy separated in 2009 after he admitted to having a past sexual relationship with A.D. After the separation, Suzanne could no longer home school their children. She enrolled them at Heritage Christian School so she could begin working again. At the time of trial, Suzanne was a physical education teacher and athletic director at Heritage Christian School, was the advanced director of her own Pampered Chef business, was a part-time substitute teacher at Bates Technical College, and worked at NBC sports camps in the summers. In order to renew her public school teaching certificate, Suzanne needed to complete recertification training.

Suzanne was uncomfortable allowing Timothy to see the children after learning about his relationships with R.B. and A.D. and, as a result, Timothy rarely saw the children. Suzanne also testified about Timothy's relationships with several other students that she felt were inappropriate. When Suzanne allowed Timothy to see their children, she believed that he "push[ed] boundaries," and she was uncomfortable with his manipulative use of religion around them. 3 PR at 401.

Suzanne asked the court to award maintenance of $500 a month for a year so that she could complete recertification training for her public school teaching certificate. Her financial declaration stated that her gross monthly income was nearly $3,000 a month; but after business expenses, her net income was $1,915 a month and her monthly household expenses were over $5,600 a month.

She also testified about Timothy's income. After Timothy resigned his teaching position, he became a real estate agent, worked for a business leadership camp, and also worked odd jobs such as remodeling and painting houses. Suzanne submitted documentation that Timothy made around $6,000 a month from his real estate business alone; but at the time of trial, Timothy was approximately $22,000 behind on court-ordered child support. Suzanne asked the court to find Timothy in contempt of that order because he failed to pay the required child support and maintenance.

At trial, Timothy admitted to sexually abusing R.B. and gave the court details of how and when the sexual abuse occurred. Timothy stated it was "inappropriate and [he] recogniz[ed] [later] that it was wrong to do." 4 RP at 568. He also testified about the counseling and sexual addiction classes he had undergone since victimizing R.B. Partially because of the supervision costs, Timothy often did not exercise his right to see his children. Timothy testified that his income was substantially lower than Suzanne alleged it was. He testified that his gross income was only $1,500 a month, and that the court ordered him to pay $3,400 a month in child support. He testified about inconsistency in the real estate business, about how he was struggling financially because his business had taken a hit from the economy, and about expenses necessary to maintain his business. He objected to Suzanne's request for a contempt ruling because he did not have the money to pay the amount of ordered child support or maintenance. He also testified about his proposal for the division of property.

The court submitted its oral ruling on November 4, 2011.[2] The court's written orders are in our record. The court ordered that the children would reside with Suzanne except for every Wednesday evening and Sunday afternoon when Timothy would have professionally supervised three-hour visits.

The court also gave Timothy professionally supervised three-hour visits on certain holidays and three 15-minute phone calls with the children each week, finding that Timothy's residential time with the children must be limited because he engaged in physical, sexual, or a pattern of emotional abuse of children under RCW 26.09.191(2). The court also found that Timothy's conduct or parental involvement may not be in the children's best interests due to the existence of a long-term emotional or physical impairment which interferes with the performance of a parenting function under RCW 26.09.191(3). The court found that "the whole litany of inappropriate sexual fondling of minor boys who are later now grown men . . . is indicative of being an abuse of trust, abuse of power and position." Clerk's Papers (CP) at 208.

The court's distribution of property resulted in a 50/50 split between Suzanne and Timothy. The court also awarded Suzanne spousal maintenance of $500 a month for 12 months, and restrained Timothy from disturbing the peace of Suzanne and being present at any of the children's school or extracurricular activities unless another adult was present. The court awarded judgment against Timothy for back child support and ordered that Timothy continue to pay $1,544 a month in child support—calculated by the standard calculation on the child support worksheets, plus 65 percent of the children's private school tuition and sports and activity fees.

---

[2] We do not have a verbatim report of the November 4 hearing. (RAP 9.5(c) puts a burden on the respondent to supplement, or move to compel appellant to supplement the record on appeal.)

The court also awarded Suzanne attorney fees, finding Timothy in contempt for his failure to pay over $22,000 in child support. Timothy appeals.

ANALYSIS

STANDARD OF REVIEW

The issues in this case relate to the trial court's final dissolution decree, parenting plan, and child support order and we review them for abuse of discretion. *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998); *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885, *review denied*, 176 Wn.2d 1009 (2012). The decision rests on untenable grounds if the factual findings are unsupported by the record; and it is based on untenable reasons if it relies on an incorrect standard or the facts do not meet the requirements of the correct standard. *Bowen*, 168 Wn. App. at 586-87. We will uphold a trial court's findings of fact if substantial evidence supports them. *In re Marriage of Bernard*, 165 Wn.2d 895, 903, 204 P.3d 907 (2009). Evidence is substantial if it is sufficient to persuade a fair-minded person of the truth of the declared premise. *Bernard*, 165 Wn.2d at 903. We defer to the trial court on witness credibility and the persuasiveness of the evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). We then determine whether the trial court's findings of fact support the trial court's conclusions of law. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007), *review denied*, 163 Wn.2d 1055 (2008).

PARENTING PLAN

Timothy argues that (1) the trial court erred when it imposed restrictions on his residential time with his children pursuant to RCW 26.09.191, (2) the trial court erred when it granted Suzanne sole decision making for the children's religious upbringing because there was no affirmative evidence that his religion would pose any actual or potential harm to the children, and (3) the GAL's recommendations were not supported by substantial evidence. Suzanne responds that (1) the statute required the trial court to restrict Timothy's residential time under RCW 26.09.191, (2) the court's religious restriction was necessary to prevent Timothy from using religion to manipulate the children, and (3) the court properly relied on the GAL's recommendations. We agree with Suzanne.

We review a parenting plan for abuse of discretion. *Caven*, 136 Wn.2d at 806. In fashioning a parenting plan, the court's discretion must be guided by several provisions of the Parenting Act of 1987 (ch. 26.09 RCW), including RCW 26.09.191. *In re Marriage of Katare*, 175 Wn.2d 23, 35-36, 283 P.3d 546 (2012), *cert. denied*, 133 S. Ct. 889 (2013). This statute requires that a court limit a parent's residential time if that parent has engaged in physical, sexual, or a pattern of emotional abuse of a child. RCW 26.09.191(2)(a); *Katare*, 175 Wn.2d at 35-36. If a court limits a parent's residential time for this reason, the limitation must be reasonably calculated to protect the child from physical, sexual, or emotional abuse or harm by that parent. RCW 26.09.191(2)(m)(i); *Katare*, 175 Wn.2d at 36. Appropriate limitations include supervised visits. RCW 26.09.191(2)(m)(i). Also, a court can limit any provision of a parenting plan based on factors the court expressly finds adverse to the best interests of the children. RCW 26.09.191(3)(g); *Katare*, 175 Wn.2d at 36.

A. RESIDENTIAL RESTRICTIONS

The court found that Timothy's residential time with the children should be limited because he engaged in physical, sexual, or a pattern of emotional abuse of children under RCW 26.09.191(2). The court also found that Timothy's parental involvement or conduct may not be in the children's best interests because of the existence of a long-term emotional or physical impairment which interferes with the performance of a parenting function under RCW 26.09.191(3).[3]

Substantial evidence supports these findings.[4] Timothy admitted to sexually abusing R.B., giving details of how and when the sexual abuse occurred. Timothy testified it was "inappropriate and [he] recogniz[ed] that it was wrong to do." 4 RP at 568. R.B. also testified, in detail, about his relationship with Timothy, including the sexual abuse. Dr. Traywick testified that Timothy admitted to sexually abusing R.B. during Dr. Traywick's evaluation. Timothy admitted that he used religion to manipulate R.B. and others.

A.D. testified that although she did not engage in sexual intercourse with Timothy until after she turned 18, she felt sexually groomed and manipulated by Timothy from age 13. Knight testified that she believed Timothy engaged in classic sexual abuse grooming behaviors and posed a threat to the safety and well-being of his own children. She also testified that Timothy

---

[3] The court also found that "the whole litany of inappropriate sexual fondling of minor boys who are later now grown men . . . is indicative of being an abuse of trust, abuse of power and position." CP at 208. Although the record does not wholly support this finding, because there is direct evidence of sexual fondling of a single minor boy, the record supports the other findings and these findings are sufficient to support the conclusion that Timothy's residential time should be limited.

[4] In his appellate brief, Timothy admits that he sexually abused R.B. and that he had a sexual relationship with A.D.

10

used religion to weaken the defenses of children, and his children expressed that they were uncomfortable praying with him.

The GAL testified about her investigation and expressed concern with Timothy's parenting. A major concern was Timothy's use of religion and his religious grooming practices, which were the subject of several school district disciplinary actions. She also believed that Timothy's use of religion caused emotional damage to his children. Finally, the court considered several letters written to his minor-aged victims demonstrating his grooming technique and use of religion to gain the children's emotional dependency. Substantial evidence supports the court's findings that Timothy sexually and/or emotionally abused children. Because the court found that Timothy had a history of engaging in sexual and/or emotional abuse of children and that his inappropriate relationships with minors may have an adverse affect on the children, it was required to limit Timothy's residential time under RCW 26.09.191(2)(a).

The court ordered that the children reside with Suzanne except for every Wednesday evening and Sunday afternoon when Timothy would have professionally supervised visits. The court also gave Timothy professionally supervised three-hour visits on certain holidays and three 15-minute phone calls with the children each week. RCW 26.09.191(2)(m)(i) specifically provides for supervised visitation as an appropriate limitation when the parent has engaged in sexual abuse of children under RCW 26.09.191(2)(a). Therefore, we cannot say that the court abused its discretion in ordering supervised visits when the statute specifically provides for supervised visits under these circumstances. *Bowen*, 168 Wn. App. at 586-87.

Nonetheless, Timothy argues that the court did not reasonably calculate its restrictions to protect his children because his last incident of sexual abuse of a child occurred 13 years prior to trial and he had undergone therapy since then. But Timothy does not cite any authority to

11

support his argument that a time lapse or completion of treatment since admitting to sexual abuse requires the court to disregard the requirements of RCW 26.09.191(2)(a). Without such authority, he fails to show that the trial court abused its discretion when there is substantial evidence of his history of sexually and emotionally abusing children and there is evidence he engaged in inappropriate grooming of his own children. We find no abuse of discretion or error of law.

## B. RELIGIOUS UPBRINGING

A trial court has wide latitude of discretion in ordering parenting restrictions based on the best interests and welfare of the children. *Munoz v. Munoz*, 79 Wn.2d 810, 813-14, 489 P.2d 1133 (1971). Under this wide latitude of discretion, a court may restrict a parent's religious decision making when there is an affirmative showing of compelling reasons to do so. *Munoz*, 79 Wn.2d at 813-14.

Timothy argues that the trial court erred when it granted Suzanne sole decision making for the children's religious upbringing because the trial court did not make a finding that Timothy's religious beliefs posed a potential harm to the children. The court's order provided that Timothy's decision making in education, nonemergency health care, and religious upbringing must be limited because of (1) the existence of a limitation under RCW 26.09.191, (2) the history of participation of each parent in decision making, (3) the parents' demonstrated ability to cooperate with one another in these areas, and (4) the parents' geographic proximity to one another. The court's order also provided that "[p]rayer or the discussions of religious matters shall not be allowed between the father and the children." CP at 207.

There is substantial evidence that because Timothy used religion as a tool to manipulate and groom children, restricting Timothy's religious decision making was in the best interests of

12

the children. Knight testified that Timothy used religion as a grooming technique, citing scripture and talking to them about God and praying. Knight believed Timothy threatened the safety and well-being of his children, and she expressed a concern about his use of religion. She also testified that Timothy had used religion to weaken the defenses of children in the past and that his own children expressed that they were uncomfortable praying with him.

Dr. Traywick also testified that Timothy admitted he was accused of using religion to groom children, and admitted his religious grooming conduct eventually led him to resign from his teaching position. As part of his grooming practice, he wrote "encouragement letters" to children. Included in the court's records were several of these letters, and the court considered them in its ruling.

The GAL also testified about Timothy's use of religion being the subject of several school district disciplinary actions and Timothy's use of religion was emotionally damaging to the children. The trial court neither abused its discretion nor infringed upon Timothy's free exercise of religion when (1) it ruled that Timothy's religious decision making should be limited and (2) it ruled he should not discuss religion with his children because there was substantial evidence that Timothy's use of religion posed an actual or potential harm to the children.

## C. GAL's RECOMMENDATIONS

Third, Timothy argues that there was no substantial evidence supporting the GAL's recommendation that his residential time should be limited and supervised because Dr. Traywick also testified that Timothy was not a danger to his children. We defer to the trial court on witness credibility and the persuasiveness of the evidence. *Akon*, 160 Wn. App. at 57. After hearing all the evidence presented, the trial court was free to find Dr. Traywick's testimony less persuasive than the GAL's testimony. Although Timothy argues that the GAL's

13

recommendations were unsupported by the substantial evidence, this is a misplaced argument because we do not review whether substantial evidence supports the GAL's recommendation; rather, we review whether substantial evidence supports the trial court's findings and whether those findings support its conclusions. Because we already determined that the trial court was required to limit Timothy's residential time with the children under RCW 26.09.191(2)(a), the trial court did not abuse its discretion by agreeing with the GAL that Timothy's residential time should be limited.

DIVISION OF DEBTS AND ASSETS

Next, Timothy argues that the trial court improperly divided the couple's debts and assets. He asserts that the trial court (1) considered his sexual abuse history when it divided the property, (2) allowed Suzanne to inflate the property awarded to Timothy and deflate the property awarded to her, (3) should not have awarded Suzanne $11,000 in mortgage payments Timothy did not make, and (4) failed to consider the $125,000 in equity the parties removed from their home and placed into mutual funds. Suzanne responds that the trial court did not abuse its discretion because (1) the record does not support the assertion that the trial court considered Timothy's sexual abuse history, (2) her testimony supported the value of the couple's property, (3) the trial court properly recognized Timothy's liability of $11,000 for mortgage payments he agreed to pay, and (4) the record shows that the court properly analyzed all the couple's debts and assets. We agree with Suzanne.

The trial court has broad discretion in distributing marital property, and we reverse only if it has manifestly abused its discretion. *Rockwell*, 141 Wn. App. at 242-43. In reaching a "just and equitable" property division, a trial court must consider four factors: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the

duration of the marriage, and (4) the economic circumstances of each spouse at the time the property division will become effective. RCW 26.09.080; *Rockwell*, 141 Wn. App. at 242. All property, community and separate, is before the court for distribution. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). We will not substitute our judgment for that of the trial court on a disputed factual issue such as the valuation of property. *Worthington v. Worthington*, 73 Wn.2d 759, 762, 440 P.2d 478 (1968).

Timothy's assertions that the court improperly considered his sexual abuse history when it divided the property and his assertion that the trial court should not have awarded Suzanne $11,000 in mortgage payments are unsupported by citation to the record or to any authority. Nor did we find any support in the record for his assertion that the trial court considered Timothy's sexual abuse history when it divided the property. Timothy has shown no error.

Next, Timothy argues that the court allowed Suzanne to inflate the value of his property while deflating the value of her property. We do not review Suzanne's assertions; rather, we review the trial court's decisions. As Timothy admits, the trial court based its determinations, in part, on credibility decisions and we do not review credibility on appeal. *Akon*, 160 Wn. App. at 57. We will not substitute our judgment for that of the trial court on a disputed factual issue such as the valuation of property. *Worthington*, 73 Wn.2d at 762. The decree of dissolution lists the property awarded to each spouse, lists the values that the court used, and shows that the trial court split the couple's property 50/50. Timothy's argument does not show that the trial court abused its discretion in its 50/50 split of the property.

Both parties testified to the valuation of their assets. The trial court, taking the testimony of both Timothy and Suzanne, made credibility determinations. Because we will not substitute our judgment for that of the trial court and will not review its credibility determinations, we hold

that the trial court did not abuse its discretion when it valued the debts and assets and divided the couple's debts and assets equally.

CHILD SUPPORT

Timothy argues that the trial court erred when it calculated the parties' income for child support purposes because (1) the court should have found Suzanne underemployed and imputed a higher income for her, (2) the court did not accept Timothy's actual income and instead relied on Suzanne's assertion of what Timothy's income was, and (3) the court should not have ordered Timothy to pay a share of the private school tuition when he had no say in the decision to incur the expense. We disagree.

We review child support orders for an abuse of discretion. *Griffin*, 114 Wn.2d at 776. Each child support order must meet the children's basic needs and provide additional financial support commensurate with the parents' income, resources, and standards of living. RCW 26.19.001; *In re Marriage of Ayyad*, 110 Wn. App. 462, 467, 38 P.3d 1033, *review denied*, 147 Wn.2d 1016 (2002). RCW 26.19.071(6) requires a court to impute income to a parent who is voluntarily unemployed or underemployed. A court is required to base its decision to impute income on the parent's work history, education, health, age, and any other relevant factor. RCW 26.19.071(6); *In re Marriage of Pollard*, 99 Wn. App. 48, 52-53, 991 P.2d 1201 (2000). "If the court decides the parent is 'gainfully employed on a full-time basis,' but also underemployed, the court makes a further determination whether the parent is purposely underemployed to reduce his or her support obligation." *Pollard*, 99 Wn. App. at 53 (quoting RCW 26.19.071(6)).

First, Timothy argues that the court should have found Suzanne underemployed and imputed a higher income for her because she had let her teacher certification lapse and had not completed her certification since the couple separated. Suzanne's testimony supports that she

16

was not underemployed. Although she had been a full-time teacher before having children, Suzanne testified that her public school teaching certification lapsed after she had her second child because she and Timothy agreed that she would be a stay-at-home mom and raise the children. But at the time of trial, Suzanne was working several jobs. Because of Timothy's and Suzanne's conflicting testimony about how much money Suzanne could or should have been making, the trial court was free to determine whose testimony was more persuasive. We do not disturb those credibility determinations. *Akon*, 160 Wn. App. at 57. The trial court did not abuse its discretion in rejecting Timothy's contention that Suzanne was underemployed.

Next, Timothy argues that the court did not accept his actual income and instead relied on Suzanne's assertion of what Timothy's income was. Again, when faced with conflicting testimony, the trial court is free to determine whose testimony was more persuasive. *Akon*, 160 Wn. App. at 57. We do not disturb those findings.

Finally, Timothy argues that the court should not have ordered him to pay a share of the private school tuition because he had no say in the decision to incur the expense and the court failed to consider his ability to pay. Br. of Appellant at 21 (citing *In re Marriage of McCausland*, 129 Wn. App. 390, 412, 118 P.3d 944 (2005), *rev'd on other grounds*, 159 Wn.2d 607, 152 P.3d 1013 (2007)). RCW 26.19.080(3) states, "[S]pecial child rearing expenses, such as tuition . . . are not included in the economic table. These expenses shall be shared by the parents in the same proportion as the basic child support obligation." RCW 26.19.080(3). The trial court has discretion to determine the "necessity for and the reasonableness of" payments in excess of the basic child support obligation. RCW 26.19.080(4); *State ex rel. J.V.G. v. Van Guilder*, 137 Wn. App. 417, 427, 154 P.3d 243 (2007). A trial court is required to make findings

about a parent's ability to pay for extraordinary expenses whenever the objecting parent raises the issue. *J.V.G.*, 137 Wn. App. at 429.

Because Timothy failed to object to the private school tuition, the court was not required to make special findings about his ability to pay. Timothy's failure to object to the private school tuition as an extraordinary expense is fatal to his argument here because the court had to make special findings about his ability to pay if he first raised the issue. *J.V.G.*, 137 Wn. App. at 429. Therefore, he cannot show that the trial court abused its discretion in ordering him to pay 65 percent of the private school tuition.

MAINTENANCE

Timothy argues that the trial court erred when it ordered him to pay maintenance to Suzanne because it found Timothy's income was substantially higher than it was, he does not have the ability to pay, Suzanne is capable of supporting herself but is underemployed, and "this was not a family use[d] to living high on the hog." Br. of Appellant at 23. Again, we disagree that the trial court erred.

An award of spousal maintenance is within the trial court's discretion. *In re Marriage of Crosetto*, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion. *Crosetto*, 82 Wn. App. at 558. The nonexclusive list of statutory factors includes the parties' post-dissolution financial resources; the time needed for the party seeking maintenance to become self-sufficient; the duration of marriage; the standard of living during marriage; the parties' age, health, and financial obligations; and the ability of one spouse to pay maintenance to the other. RCW 26.09.090. The only limitation on the amount and duration of maintenance is that the award must be just in light of the relevant factors under RCW 26.09.090. *In re Marriage of Washburn*,

18

101 Wn.2d 168, 178, 677 P.2d 152 (1984). "[M]aintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." *Washburn*, 101 Wn.2d at 179.

Other than a bare assertion that the trial court erred, Timothy fails to show how the trial court abused its discretion. Because we defer to the trial court's determinations regarding credibility and the persuasiveness of the evidence, we cannot find on this record that the trial court abused its discretion in awarding maintenance.

## SUPERIOR COURT ATTORNEY FEES

Timothy argues that the trial court erred and abused its discretion when it ordered him to pay Suzanne's attorney fees because "Dr. Traywick evaluated [Timothy] and determined he was not a danger to his children, and [Suzanne's] real reason for filing for dissolution was [Timothy's] affair with [A.D.]." Br. of Appellant at 23-24. Timothy also argues that he does not have the ability to pay attorney fees. We conclude that the trial court properly exercised its discretion in awarding attorney fees to Suzanne.

When a party argues an issue without any reference to the record or citation to authority, we do not consider the issue. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Because we do not consider inadequately argued issues, we uphold the trial court's decisions. *Cowiche*, 118 Wn.2d at 809. A trial court has discretion to award reasonable attorney fees to either party. *Ayyad*, 110 Wn. App. at 473. The court must consider the financial resources of both parties by balancing the requesting party's need for a fee award against the other party's ability to pay. *Ayyad*, 110 Wn. App. at 473. In calculating a reasonable amount of fees, the court must consider three factors: "(1) the factual and legal

19

questions involved; (2) the amount of time necessary for preparation and presentation of the case; and (3) the value and character of the property involved." *Ayyad*, 110 Wn. App. at 473.

Neither the record nor any citation to legal authority supports Timothy's short and conclusory argument. Because Timothy failed to adequately argue the issue in his brief, we uphold the trial court's award of Suzanne's attorney fees.

CONTEMPT

Last, Timothy argues that the trial court abused its discretion when it found him in contempt for failure to pay child support because he did not have the ability to pay. We hold that the trial court did not abuse its discretion.

We review a trial court's decision in a contempt proceeding for an abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). Contempt of court is, in part, the intentional disobedience of a lawful court order. *In re Marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). Timothy's argument is very brief. After citing RCW 26.18.050(1), Timothy states, "Here, as argued above, [Timothy] did not have the ability to pay, therefore cannot be held in contempt. The trial court's finding of contempt should be vacated." Br. of Appellant at 25. Again, neither the record nor citation to legal authority supports Timothy's argument; thus, we do not consider the issue, and uphold the trial court's finding that Timothy was in contempt.

ATTORNEY FEES ON APPEAL

Suzanne requests attorney fees on appeal under RAP 18.1 and *Thompson v. Lennox*, 151 Wn. App. 479, 484, 212 P.3d 597 (2009), arguing that, generally, if attorney fees are allowable at trial, the prevailing party may recover them on appeal as well.

In dissolutions, RCW 26.09.140 allows us to award appellate attorney fees to a party for the cost of maintaining an appeal of a dissolution case. In doing so, we must consider the requesting party's financial need and the other party's ability to pay. *Ayyad*, 110 Wn. App. at 474. A showing of financial need must be made by affidavit and filed no later than 10 days before this court is scheduled to consider the appeal. RAP 18.1(c). Suzanne did not file an affidavit of need; therefore, she is not entitled to fees under RCW 26.09.140.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, C.J.

BJORGEN, J.

21