IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CRYSTAL JEAN FOX,<br><br>                    Appellant,<br><br>v.<br><br>DAVID L. HAYES,<br><br>                  Respondent. | No. 79072-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 4, 2019 |

ANDRUS, J. — A court commissioner held Crystal Fox in contempt for failing to comply with a court-ordered parenting plan and interfering with David Hayes's residential time with their children. Crystal[1] moved to revise the commissioner's order, which the superior court upheld. She now appeals the order of contempt. We affirm.

## FACTS

Crystal and David co-parent two minor children pursuant to a court-approved permanent parenting plan. The plan provides that the children shall primarily reside with David and reside with Crystal at other designated times.

Beginning in late June 2017, the children—ages 14 and 9 at the time—began refusing to return to David's home. Although Crystal transported them to the exchange location, the children refused to leave Crystal's vehicle. Between June 29 and

---

[1] We use the parties' first names for purposes of clarity and mean no disrespect by doing so.

August 21, 2017, David had missed 19 days of visitation with one child and 21 days with the other.

On August 22, 2017, David sought a contempt order against Crystal for failing to comply with the parenting plan. In his declaration, David alleged that Crystal, after having failed on multiple occasions to modify the parenting plan that she disliked, coaxed the children into refusing to get out of her vehicle and go with him at visitation exchanges. David also claimed that, once school started in fall 2017, Crystal did not return the children after they had refused to take the school bus to his home.

Crystal contended she had complied with all court orders but the "children are physically refusing to spend time with" David. Clerk's Papers (CP) at 103. In her declaration filed on September 21, 2017, Crystal stated:

> I encourage the [children] to see their father every single day . . . I have done everything I can to comply with the order. The refusal of the [children] to get out of the car is not a willful act on my part. I drive the [children] to the non-school exchanges every week. I am there, on time, with both of the [children] in the car.

CP at 103. She claimed to have had done everything in her power to facilitate the children's visitation with David, but they simply refused to go with him. She was "at a loss" for the children's behavior. CP at 110.

In a reply, David further declared that Crystal never got out of her vehicle to assist with the visitation exchanges or did anything else to encourage the children. He claimed Crystal had a history of "trying to alienate the children through false allegations, coercion to get them to lie, and otherwise subvert" the parenting plan.[2] CP at 127. David also

---

[2] David submitted Child Protective Services (CPS) records showing the agency investigated six claims that he abused the children, but CPS concluded all of the allegations were unfounded.

supplemented that, as of September 25, 2017, he had missed 43 days with one child and 40 days with the other.

On September 27, 2017, a court commissioner found Crystal had, in bad faith, intentionally failed to comply with the residential provisions of the parenting plan since June 29, 2017. To sanction her contempt, the commissioner ordered Crystal to pay a $100.00 penalty and David's attorney fees and costs, and awarded David make-up residential time with the children.[3] Crystal filed a motion to revise the commissioner's order of contempt. On October 20, 2017, the superior court denied the motion for revision and affirmed the commissioner's order. Crystal appeals.

## ANALYSIS

Crystal argues there is no evidence to show she violated any provisions of the parenting plan or encouraged the children's refusal. She also contends she is entitled to attorney fees on appeal. We disagree.

### Standard of Review

A commissioner's ruling is subject to revision by the superior court. RCW 26.12.215; RCW 2.24.050.[4] On revision, the superior court reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner. In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). Once the superior court makes a decision on revision,

---

[3] The commissioner also entered orders requiring the children be immediately enrolled in counseling and denying David's motion to strike an exhibit to Crystal's declaration. Those orders are unrelated to the issues in this appeal.

[4] RCW 26.12.215 provides: "All acts and proceedings of the court commissioners shall be subject to revision by the superior court as provided in RCW 2.24.050." In relevant part, RCW 2.24.050 states: "All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. . . Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner."

the appeal is taken from the superior court's decision, not the commissioner's. State v. Wicker, 105 Wn. App. 428, 433, 20 P.3d 1007 (2001).

We review a superior court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995), distinguished on other grounds by In re Marriage of Rideout, 150 Wn.2d 337, 354-55, 77 P.3d 1174 (2003). A superior court abuses its discretion by exercising it on untenable grounds or for untenable reasons. James, 79 Wn. App. at 440. We review the superior court's contempt findings for substantial evidence. In re Marriage of Myers, 123 Wn. App. 889, 893, 99 P.3d 398 (2004). However, we do not review credibility determinations on appeal because "trial judges and court commissioners routinely hear family law matters" and "are better equipped to make credibility determinations." Rideout, 150 Wn.2d at 352.

### The Contempt Order

A parent seeking a contempt order for a parent's failure to comply with a parenting plan must establish the contemnor's bad faith by a preponderance of the evidence. James, 79 Wn. App. at 442. If the superior court finds that a parent has, in bad faith, failed to comply with the parenting plan, "the court shall order" the contemnor (1) to provide additional visitation time to make up for the missed time, (2) pay the other parent's attorney fees and costs, and (3) pay the other parent a penalty of at least one hundred dollars. RCW 26.09.160(2)(b)(i)-(iii). Other than sending a parent to jail, punishment for contempt under these circumstances is mandatory, not discretionary. Myers, 123 Wn. App. at 893.

Parents who refuse to perform the duties imposed by a parenting plan are per se acting in bad faith. RCW 26.09.160(1). Parents are deemed to have the ability to comply

-4-

with orders establishing residential provisions and the burden is on a noncomplying parent to establish by a preponderance of the evidence that he or she lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance. RCW 26.09.160(4); Rideout, 150 Wn.2d at 352-53.

A. The Contempt Findings are Clear

As an initial matter, Crystal contends that the lower court failed to make specific findings regarding what provisions of the parenting plan she violated or what behavior was deemed to be in bad faith.[5] The record does not support her argument.

Here, the commissioner found, in the order of contempt, that Crystal "did not obey" the residential provisions of the 2013 parenting plan as "described in the Motion for Contempt Hearing" and failed to comply with the residential time provisions of the plan "since June 29, 2017." CP at 140. The Motion for Contempt, in turn, incorporated David's declaration in which he testified about the repeated instances where Crystal encouraged the children, through her conduct and comments, to refuse to return to their father's home when required to do so under the parenting plan. The contempt order also stated Crystal "acted in bad faith" because she was not willing to follow the parenting plan while having the ability to do so. CP at 140. We view the contempt order's findings to be sufficiently clear.

---

[5] Crystal's briefing is unclear about which order—whether contempt or revision—she claims lacks specific findings. However, we note that "when the superior court denies a motion for revision, it adopts the commissioner's findings, conclusions, and rulings as its own." J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007). Therefore, the superior court is not required to enter separate findings and conclusions. In re Dependency of B.S.S., 56 Wn. App. 169, 171, 782 P.2d 1100 (1989).

B. Substantial Evidence Supports the Contempt Findings

Crystal argues that there was no tenable basis to support the contempt order's findings because the "evidence reflects the children are being defiant, and [she] has followed the provisions of the parenting plan." Appellant's Br. at 25. "It is the [children] who tell their father they do not want to go with him." CP at 104. Crystal reasons that, because she arrived on time and with the children for all scheduled visitations, there is no evidence to show that she violated any provisions of the parenting plan.

This case is similar to Rideout. There, a mother repeatedly failed to deliver a child to the father for scheduled residential time. 150 Wn.2d at 355. When the father sought an order of contempt, the mother responded that the father's dispute was solely with the child because the child did not want to visit the father. Id. at 353. While the mother did not dispute that she failed to deliver the daughter to the exchange location, she argued that her failure to comply was not in bad faith. Rejecting this argument, the superior court determined that the mother "was a competent, and capable parent with the ability to require her 13-year-old daughter to comply with the court's orders yet . . . failed to do so." Id. (quotation marks omitted).

Upon review, the Supreme Court outlined the basic responsibilities of parents under a parenting plan, explaining that: "Whether they like it or not, parents . . . have an obligation to attempt to overcome the child's resistance to the residential time in order to ensure that a child's residential time with the other parent takes place." Id. at 356. It affirmed the contempt order against the mother, holding:

> [W]here a child resists court-ordered residential time and where the
> evidence establishes that a parent either contributes to the child's attitude
> or fails to make reasonable efforts to require the child to comply with the

parenting plan and a court-ordered residential time, such parent may be deemed to have acted in "bad faith" for purposes of RCW 26.09.160(1).

Id. at 356-57.

Crystal attempts to distinguish Rideout by noting that she consistently delivered the children to the exchange location but the children refused to get out of her car.[6] This argument indicates that Crystal misunderstands Rideout and her obligations as a parent. Crystal, not her children, has the responsibility of ensuring residential time with David under the parenting plan. And she must make every effort to require the children to comply with its terms. The record indicates, however, that Crystal did little to get the children to attend their scheduled residential time with David and attempted to undermine their relationship with him.

First, the children never refused to return to their father at exchanges until after Crystal lost three separate motions to modify the parenting plan and David refused a fourth request to change the plan in May 2017. Second, when Crystal was present during exchanges, she repeatedly made derogatory comments about their father in front of the children and affirmatively refused to assist him or his parents in talking with the children about getting out of her car and leaving with the father. When the children were supposed to ride the school bus to their father's home, Crystal instead encouraged the children to walk to her house from school in violation of the parenting plan. Finally, when David asked to meet with Crystal, a school counselor, and the assistant superintendent to

---

[6] Crystal also cites to a North Carolina decision, Hancock v. Hancock, 122 N.C. App. 518, 471 S.E.2d 415, 420 (1996), for the proposition that a contempt order is inappropriate when a custodial parent who does not prevent visitation but takes no action to force visitation when the children refuse. The Hancock case is not persuasive. The Rideout court was aware of Hancock but did not follow the North Carolina court's holding. Rideout, 150 Wn.2d at 353-54 n.6.

discuss how to encourage the children to get on the bus, Crystal merely shrugged her shoulders when asked how she could help resolve the issue.

The court commissioner, in reaching its decision at the contempt hearing, noted Crystal's lack of attempting to command the minor children to return to David, as well as her pattern of raising unsubstantiated child abuse allegations against David:

> I didn't see a thing throughout [Crystal's] declaration other than the mere bare allegation . . . that, quote, I have done everything in my power to facilitate visitation. I didn't see anything that's saying I have control over a 10-year-old child as an adult parent. And the 10-year-old child is going to listen to me and go visit with the other parent who is the residential parent.
>
> . . .
>
> Here is the other problem. [Crystal] filed three different modifications which were all denied. Filed CPS reports, which are all unfounded. . . What's concerning to me is both law enforcement and CPS followup [sic] finds that there is no credibility to the allegation. Anywhere. On multiple occasions. That's what's concerning to me. In other words, it is not just [David] against [Crystal] making allegations back and forth, but [Crystal] saying I want independent third-parties to go out and investigate. They come back with nothing that supports your client's position. And these are forensic interviews that are going on with these children. . . These are independent neutral parties. Law enforcement, CPS.

CP at 160-62.

During the revision hearing, the superior court echoed similar concerns regarding Crystal's behavior:

> All of the documents that I reviewed, including the historical context of this case, demonstrates to me that [Crystal] is failing to fulfill her parental duty to insure that that court order is complied with. She has taken zero affirmative steps. The fact that she brings them to the visitation is not, to me, an affirmative step if she is undermining [David's] role as a parent prior to getting there.
>
> There is no evidence, no reliable evidence that [David] has abused these children. None. There has never been a finding that he has. And the history of this case demonstrates to me that [Crystal] is using CPS, the police and the prosecutors, to undermine that relationship. The record I

reviewed is sufficient to find that [Crystal] is in contempt for failing to comply with the Parenting Plan.

Verbatim Report of Proceedings (RP) at 23.

In reviewing the record, there is no dispute that the children missed a substantial amount of residential time with David between June and September 2017. For each time the children refused to return to David, Crystal was obligated to take some affirmative step in returning the children to him. To avoid contempt, Crystal had to show by a preponderance of the evidence that, because of the children's recalcitrance, she was unable to comply with the parenting plan. But the record is absent of evidence Crystal did anything beyond taking the children to the exchange location. For instance, Crystal's lengthy declaration does not describe a single time she insisted to the children that she had to drive them to David's home after they refused to get on the school bus to David's home. Crystal's failure to attempt such return efforts supports the conclusions that she, in bad faith, failed to comply with the parenting plan.[7]

The record also shows that prior to June 29, 2017, Crystal made three unsuccessful attempts to modify the 2013 parenting plan. CPS conducted six investigations of abuse associated with the children and concluded the allegations to be unfounded.[8] The CPS reports indicate that Crystal appeared to direct the children's comments about David, supplied misinformation about David's desire to have the children

---

[7] Crystal asks this court to enter an advisory opinion addressing what parents must do when they comply with a parenting plan but their children do not. Because we do not issue advisory opinions on speculative facts, we decline Crystal's invitation to do so here. To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 416, 27 P.3d 1149 (2001), cert. denied, 535 U.S. 931, 122 S.Ct. 1304, 152 L.Ed.2d 215 (2002).

[8] Some of the unfounded allegations include David hitting one child in the face, resulting in a bloody nose and David choking the other child with a belt.

attend counseling, and promised the children that, after talking to CPS and the police, they would be living with her soon. This evidence supports the conclusion that Crystal attempted to undermine the children's relationship with David.

Accordingly, we hold that there is substantial evidence in the record to conclude that Crystal, in bad faith, intentionally failed to comply with the residential provisions of the parenting plan. The superior court did not abuse its discretion in finding Crystal in contempt of court.

## Attorney's Fees

Both parties ask for attorney's fees on appeal. Having upheld the superior court's order of contempt, we award David his attorney's fees and costs on appeal under RCW 26.09.160(2)(b)(ii), provided that he complies with RAP 18.1. Since Crystal is not the prevailing party, no attorney fees are awarded to her.

The superior court's order of contempt is affirmed.

_Andrus, J._

WE CONCUR:

_Chun, J._                    _Leach, J._