[No. 44264-3-I. Division One. July 3, 2000.]

*In the Matter of the Marriage of* SAMUEL R. BELL, *Respondent,* and KIMBERLEY BELL, *Appellant.*

---

[2] We note, moreover, that *Winters* distinguished *Dayton*, which we follow here. *See Winters*, 99 Wn. App. at 616.

*William C. Budigan*, for appellant.

*Helen A. Anderson*, for respondent.

*Samuel R. Bell*, pro se.

*Roland T. Hunter* on behalf of United Fathers of America, amicus curiae.

AGID, C.J. — When Samuel and Kimberley Bell divorced in 1998, a King County Superior Court ordered Samuel to pay $400 in monthly child support for the couple's two children. In arriving at this amount, the court deviated more than 50 percent from the standard support calculation largely because of Samuel's support obligations to two other children from a previous relationship. While the court's basic decision to deviate was proper under the circumstances of this case, its reasons for doing so violate the purpose of the child support laws and were therefore an

abuse of discretion. We affirm in part, and reverse and remand in part for proceedings consistent with this opinion.

## FACTS

Samuel and Kimberley Bell married in May 1993. They later separated in September 1997, and divorced in December 1998. During their marriage, Samuel and Kimberley had two children—Samuel ("Sammy"), born July 8, 1995, and Marquese, born May 16, 1998—both of whom currently live with Kimberley. Kimberley has two other children from a prior relationship who also live with her and for whom she receives a total of $500 in monthly child support.[1] Samuel has four other children from other relationships, two of whom live with him, Chiseko and Chesiko, and two of whom he supports with child support payments, Quincy and McKinnley.

At the dissolution trial, the parties submitted conflicting income estimates and disagreed on which should be used to calculate the parents' support obligations. Samuel works full-time as a "machine shop set-up person" at a Boeing supplier and earns between $14 and $15 an hour. Kimberley works full-time as a clerk at a gas station in Seattle and earns $6.50 an hour. Samuel submitted two different estimates of his income at trial, one that included overtime pay and one that did not. He estimated his monthly net income as $2,148.79 including overtime and $1,974.28 without overtime. He estimated Kimberley's net income as $831.34. Kimberley estimated Samuel's net monthly income at $2,152.67 and her own at $1,040.78.

Of particular importance to this appeal are Samuel's multiple and significant child-related financial obligations. At the time of trial, child support orders were in place for Quincy, McKinnley, and Sammy.[2] Samuel was required to

---

[1] This $500 is actually paid for only one of those two children. Kimberley receives no support payments for the other child because the child's father is in prison.

[2] When Samuel and Kimberley separated in 1997, the trial court entered a temporary order of child support for Sammy, then age two. Support for Marquese

pay $567 each month for Quincy and McKinnley, and $519.26 a month for Sammy, for a total of $1,086.26 in monthly support obligations.[3] Evidence at trial indicated that in 1998, 50 percent of Samuel's net pay was garnished by the State as partial satisfaction of his child support obligations. There is no indication that Samuel made payments beyond the garnished amount when the garnished wages were not sufficient to cover his $1,086.26 monthly obligation.[4] Samuel has an additional child-related monthly expense of $440 for after-school day care for his two children who live with him, Chiseko and Chesiko.

At trial the court announced it would base its child support calculations on the income estimates that Kimberley provided because of her attorney's "expertise and familiarity with the statutory requirements and [the fact that] he represents the adverse party." Accordingly, the court determined that Samuel's proportional child support obligation based on the child support schedule and day care expenses, would be $969.22.[5] However, because of Samuel's limited income and his large monthly support obligation to Quincy and McKinnley, the court deviated from the standard calculation and ordered Samuel to pay a total of $400 each month in child support for Sammy and Marquese. Kimberley appeals this order.

## DISCUSSION

█ We hold that the trial court abused its discretion

was not an issue at the time because she was born after the separation.

[3] The standard calculations for McKinnley and Quincy were $347 and $220 respectively, for a total obligation of $567. The standard support calculation for Sammy was $725.57 but the court deviated because of Samuel's other support obligations.

[4] Depending on whether Samuel had worked overtime during that pay period, the garnished amount ranged from $800 to almost $1,400 each month, a substantial portion of Samuel's net income. The garnished amounts went mainly toward Samuel's current support obligations for Quincy, McKinnley, and Sammy, not toward his arrearages, which are greater than $20,000.

[5] Because Kimberley works full-time, Samuel and Marquese require full-time day care. Kimberley's mother fulfills this need by caring for Samuel and Marquese for $554 per month.

when it allowed Samuel's prior support orders to dictate the required support for the two children involved here. After calculating Samuel's standard support obligation for Sammy and Marquese at $969.22, including day care, the court deviated from that calculation based on Samuel's court-ordered support obligations to two other children, Quincy and McKinnley, which was $567 per month. Specifically, the court took 45 percent of Samuel's net income, subtracted the amount of support owed each month for Quincy and McKinnley, and determined that the balance was "available for his two children herein . . . ."[6] The King County court noted that it was "not in a position" to change the amounts of the orders covering Quincy and McKinnley because those proceedings were in Pierce County Superior Court.[7] The court ultimately ruled that Samuel must pay a total of $400 a month to support Sammy and Marquese. While the court's decision to deviate was proper under the circumstances here, the manner in which it deviated contravenes the purpose of the child support statute and was an abuse of discretion.[8]

RCW 26.19.075 sets forth a nonexclusive list of grounds on which a court may deviate from the standard child support calculation. That section reads in pertinent part: "The court may deviate from the standard calculation when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support."[9] A court must provide "specific reasons

---

[6] Whether the figure the court used for Samuel's net income was proper and whether the court should have limited Samuel's support obligations to 45 percent of his net income are separate issues addressed below.

[7] The court apparently assumed that Pierce County had jurisdiction over Quincy's and McKinnley's cases based on Samuel's testimony that he had petitioned for modification of those orders in Pierce County. Although Kimberley later learned that the modification proceedings were in King County, the trial court did not have that information before it.

[8] After the trial court determines that there are grounds for a deviation from the presumptive schedule, its deviation is reviewed for abuse of discretion. *Fernando v. Nieswandt*, 87 Wn. App. 103, 111, 940 P.2d 1380, *review denied*, 133 Wn.2d 1014 (1997).

[9] RCW 26.19.075(1)(e). "Duty of support" means all support obligations, not

for deviation" in written findings of fact and the evidence must support those findings.[10] Deviation is a discretionary matter: "When reasons exist for deviation, the court shall exercise discretion in considering the extent to which the factors would affect the support obligation."[11] Here, the trial court's determination that deviation was warranted based on "the earnings of each party [and] the support obligations paid, received and owed" was proper in light of Samuel's income and his other significant support obligations.

But the court's basis for calculating the amount of the deviation, i.e., Samuel's preexisting support obligations to other children, was improper. In creating a child support schedule the Legislature intended "to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living."[12] A Division Two case recently summed up the goal of child support as follows: "Child support is designed with the primary goal of preventing a harmful reduction in a child's standard of living, in the best interests of children whose parents are divorced."[13] The Legislature has also instructed that deviations based on a parent's obligations to children from other relationships "shall be based on consideration of the total circumstances of both households."[14]

In this case, the court simply subtracted Samuel's other support obligations from his available net income to determine child support for Sammy and Marquese. This violates

merely payments of court-ordered child support. *Fernando,* 87 Wn. App. at 111. Before a court may deviate from the statutory child support schedule based on children from other relationships, it must first apply the schedule to the mother, father, and children before the court to determine the basic support obligation and the standard calculation. RCW 26.19.075(1)(e)(i).

[10] RCW 26.19.075(2).

[11] RCW 26.19.075(4).

[12] RCW 26.19.001.

[13] *In re Marriage of Mattson,* 95 Wn. App. 592, 599-601, 976 P.2d 157 (1999).

[14] RCW 26.19.075(1)(e)(iv).

the legislative purposes and directions discussed above. The result of the court's ruling is that Sammy and Marquese receive just over 40 percent of their standard calculation while Quincy and McKinnley continue to receive their full statutory entitlement.[15] The statute clearly reflects the Legislature's intent that courts approach these cases with a great amount of flexibility. Allowing earlier child support orders to dictate later orders is not consonant with that intent. While there is no explicit requirement that courts treat each child equally, it would violate the purpose of the statute to create a situation in which two children receive less than half of their support needs solely or primarily because an earlier order granting full support to other children is already in place. Child support is not a first-come, first-served proposition.

Accordingly, we remand to the trial court for reconsideration of Samuel's support obligation to Sammy and Marquese. We strongly urge the court to use any means available to ensure that all of Samuel's support obligations are determined in relation to one another, and that each child receives a proportional and fair share, based on their individual needs, of Samuel's limited income. The attachments to Kimberley's brief regarding Samuel's request for modification of his obligations to Quincy and McKinnley underscore the importance of having one judge consider all of Samuel's support obligations together. Just before Kimberley and Samuel's dissolution trial in 1998, Samuel petitioned for modification of his support obligations to Quincy and McKinnley. When the modification request was heard in April 1999, the trial court used an estimate of Samuel's income that was significantly greater than the one used in the Samuel/Kimberley dissolution trial and in fact *increased* Samuel's obligation to McKinnley and Quincy to $588, the standard calculation based on updated information. This case demands one decisionmaker looking at one

---

[15] The court that determined McKinnley's and Quincy's initial support awards did not deviate from the standard calculations.

consistent set of income estimates and other relevant evidence.[16]

The trial court may decide on remand to consolidate all four of Samuel's child support cases (Sammy, Marquese, Quincy, and McKinnley) using the various tools available to it, for example, the joinder provisions in CR 19. At the very least, the trial court should enter a temporary support order for Sammy and Marquese and require Samuel to request modification of his earlier child support orders in light of his newer obligations to Sammy and Marquese, retaining jurisdiction pending the outcome of the modification proceedings.[17] Whatever strategy the court adopts, it must not allow Samuel's earlier orders to dictate outright his support obligations to Sammy and Marquese.

■ ■ We must next consider Kimberley's contention that the "Whole Family Formula Deviation should apply to all children in these settings to assure the Legislature's intent of adequate and equitable support." Appendix 9 to Kimberley's brief indicates that the Support Enforcement Division (SED) of the Department of Social and Health Services uses the Whole Family Method to determine the proper amount of deviation from the standard calculation in all cases that involve a parent who owes support obligations to children in more than one household.[18] The Whole Family Method is apparently based only on the total

---

[16] On remand the trial court should note that it greatly underestimated the amount of Samuel's net wages the state garnished each month. In its decision the court stated that $424.50 is deducted from Samuel's paychecks for garnishment each month. But the record indicates that half of Samuel's net income was garnished from each check and ranged from $400 to $687 *per check*, or $800 to $1,374 per month. The documentation appended to Kimberley's brief indicates that the vast majority of Samuel's garnished wages go toward his current support obligations, not arrearages, and even if Samuel's garnished wages went toward arrearages, those payments are not one of the items to be deducted when determining net income. *See* RCW 26.19.071.

[17] We note that if Samuel's modification proceedings for Quincy and McKinnley had been in Pierce County, as the court mistakenly believed, it could have changed venue so that one decision maker could determine all of Samuel's support obligations.

[18] While appendix 9 was not before the trial court, we will consider it to help us analyze Kimberley's argument that the courts should use this method uniformly.

number of children to whom the parent owes support. It involves an initial determination of the health care, day care, and special child rearing expenses for each child for whom support is being determined in a given case, and then mandates a deviation based on the number of other children to whom the parent already owes support.

In contrast, RCW 26.19.075's guidelines for deviation based on obligations to other children do not specify any one method for deviation. Rather, deviation is a discretionary decision. Deviations based on children from other relationships "shall be based on consideration of the total circumstances of both households" and "[a]ll income and resources of the parties before the court, new spouses, and other adults in the households shall be disclosed and considered . . . ."[19] Again, the court must enter findings that specify the reasons for any deviation or a denial of a deviation request, and "shall exercise discretion in considering the extent to which the factors would affect the support obligation."[20]

While a court may elect to use the Whole Family method for guidance in deviating, the Legislature clearly intended that courts exercise discretion and consider factors other than just the number of children when deciding whether to deviate based on children from other relationships. It clearly did not intend to impose any one calculation formula on the courts. Indeed the SED document on the Whole Family Method states that *"there are more deviations allowed by law and decisions of equity. Parties may ask for a Conference Board, Adjudicative Proceeding . . . or go to Superior Court to decide deviations or issues not addressed by this method."* Thus, although the SED routinely employs the Whole Family Method in cases like the one here, courts are not bound to use any one formula in calculating deviations.

---

[19] RCW 26.19.075(1)(e)(iv) and 26.19.075(2).

[20] RCW 26.19.075(3) and (4).

In an amicus brief, United Fathers of America argues that "[i]t is not adequate, equitable and predictable for the Court to calculate the deviation . . . without using the Whole Family Formula uniformly in all cases . . . ." Amicus supports this proposition by referring to the reasons the Legislature gave for adopting a child support schedule in 1988, which included "[i]ncreasing the equity of child support orders by providing for comparable orders in cases with similar circumstances."[21] While there may be good reasons to adopt a formula for cases involving deviations based on children from other relationships, it does not follow that the Whole Family Method is necessarily the best approach. It is within the province of the Legislature, not the courts, to determine whether judges should be bound by a single deviation formula and, if so, what that formula is. At this juncture, the statute is clear that the Legislature intended courts to exercise discretion when considering the appropriate deviation, with some limits, such as the statute's instruction to consider the total circumstances of both households. Any future mandates must come from the Legislature. It was not an abuse of discretion for the trial court to refuse Kimberley's request that it use the Whole Family Method.[22] At the same time, we recognize that this approach is a reasonable one and may assist the trial courts in resolving the difficult problems these cases present. We encourage them to consider it when exercising their discretion.

■ Turning to the parties' remaining arguments, Kimberley contends that the trial court erred in relying on Samuel's estimate of his net income after stating that it would use "the figures stated by the mother's attorney in his worksheets" to calculate each parent's income. Kimberley is correct that the trial court used Samuel's estimate of his monthly net income, $1,974.28, instead of

---

[21] RCW 26.19.001.

[22] For the same reasons the court could properly refuse Kimberley's request that it divide Samuel's net income by four, the number of children to whom Samuel owes support, in order to determine his support obligations.

Kimberley's estimate of $2,152.67, to calculate the limit of Samuel's total support obligation based on the statutory 45-percent ceiling.[23] This was not an abuse of discretion because courts must often choose between conflicting sources of financial estimates based on what the evidence supports. But Kimberley is correct that the court did err when it failed to count Samuel's overtime wages in calculating his net income. Courts must include overtime wages when calculating a parent's gross income.[24] Samuel submitted two sets of child support worksheets, one with overtime and one without. Samuel's estimate of his monthly net income on which the court relied, $1,974.28, did not include overtime. In contrast, Samuel's estimate of his net monthly income *with* overtime was $2,148.79. The overtime pay made a significant difference in the estimates, and the trial court should have used the estimate including the overtime.[25]

 Kimberley next contends that the trial court erred when it limited Samuel's total support obligations to 45 percent of his net income. The child support statute provides that "[n]either parent's total child support obligation may exceed forty-five percent of net income except for good cause shown."[26] Good cause includes "children with day care expenses" and "larger families."[27] Day care expenses "shall be shared by the parents in the same proportion as the basic child support obligation."[28] Although day care

---

[23] Kimberley contends in her brief that Samuel's income was actually much higher based on figures Samuel submitted when he requested modification of his support obligations to Quincy and McKinnley a few weeks after trial. Those figures, however, were not before the trial court when it issued the order to which Kimberley assigns error.

[24] RCW 26.19.071(3)(e).

[25] The court could have avoided this error if it had used Kimberley's estimates as it said it would because Kimberley's estimate of Samuel's net monthly income ($2,152.67) was virtually the same as Samuel's estimate that included overtime.

[26] RCW 26.19.065(1).

[27] *Id.*

[28] RCW 26.19.080(3). Standard calculations of child support based on the statutory table do not include day care expenses. *Id.*

expenses and family size are factors present in this case, the trial court did not abuse its discretion when it limited Samuel's total support obligation to 45 percent of his net income, particularly in light of the fact that two of Samuel's children live with him. According to Kimberley's estimates and Samuel's estimates with overtime, Samuel's monthly net income is about $2,150. It is easy to see that even with the 45-percent limit on support, Samuel will still face a challenge living on and providing for the two children living with him on the remaining 55 percent despite his moderate expenses.[29] While it may have been acceptable for the trial court to require Samuel to pay slightly more than 45 percent, it was not an abuse of discretion to impose the 45-percent limit under the circumstances here.

We must next determine whether the trial court erred when it stated that Kimberley lives with her mother. There is no basis for the court's remark that Kimberley "is living with her mother." In fact Kimberley offered uncontradicted testimony that she lives in north Seattle and her mother lives in central Seattle. Thus, to the extent that any of the court's decisions were influenced by or based on its misconception that Kimberley lives with her mother, they were in error.[30]

■ We agree with Kimberley's assertion that the trial court erred when it failed to consider the income and resources of Samuel's current housemate. Whenever the court determines that deviation from the standard calculation may be warranted for any of the sanctioned reasons, "[a]ll income and resources of the parties before the court, new spouses, and other adults in the households shall be

---

[29] The record reveals that each month Samuel pays about $550 for rent and utilities, $300 for food, $440 for after-school day care, and about $150 for additional bills.

[30] We find no indication in the record that the court's remark influenced its decision to limit the support award to $400. Indeed, the trial court included the $554 that Kimberley currently pays her mother for day care in its calculation of the children's basic need.

disclosed and considered . . . ."[31] Deviations based on a parent's support obligations to children from other relationships "shall be based on consideration of the total circumstances of both households."[32]

Samuel testified that he currently lives with a woman named Sabina Dorski Dennis who provides home day care for Chiseko and Chesiko as well as for two other children. The exact nature of Samuel's relationship with Sabina is unclear from the record, but it is clear that Samuel pays Sabina $440 a month for Chiseko and Chesiko's after-school day care. However, not only did the trial court fail to consider Sabina's day care income in its decision, it did not inquire further about her potential income from other sources. The trial court rendered its decision on support for Sammy and Marquese with virtually no information on Sabina's income or resources. This was an abuse of discretion. These amounts must be considered on remand.

■ Finally, we consider Kimberley's request for attorney fees under RCW 26.09.140 and RCW 26.18.160. RCW 26.09.140 allows this court to award attorney fees on appeal in any action under chapter 26.09, Dissolution of Marriage—Legal Separation. In view of Samuel's limited income and resources, we deny Kimberley's request. RCW 26.18.160 provides that the "prevailing party" in any action to enforce a support order is entitled to costs, including reasonable attorney fees. Kimberley is not entitled to attorney fees under this section because this was not an enforcement action.[33]

---

[31] RCW 26.19.075(2).

[32] RCW 26.19.075(1)(e)(iv).

[33] Kimberley also raises an equal protection claim, contending that parents with multiple support obligations are treated differently depending upon whether SED, which automatically uses the Whole Family Method, or another decision-making body not bound by any one formula, determines their support obligations. Under the Equal Protection Clause of the Federal Constitution, persons similarly situated must receive like treatment. *Gossett v. Farmers Ins. Co.*, 133 Wn.2d 954, 979, 948 P.2d 1264 (1997). While Kimberley does not discuss whether a suspect class is involved or a fundamental right is at stake, her equal protection claim fails

Affirmed in part, and reversed and remanded in part.

GROSSE and BAKER, JJ., concur.

regardless because there is no evidence of unequal treatment here. While the SED apparently uses the Whole Family Method in a default manner for cases like this one, it also, as we noted above, allows parties to request an alternative decision-making body if they wish to have a different standard applied to their case. In addition, any equal protection challenge to Washington's child support system would require much more information about how Washington calculates child support in various situations than either this record or these briefs contain. The SED documents on the Whole Family Method that Kimberley presents in her brief are from 1994 and are certainly not a comprehensive explanation of exactly when and to what extent the Whole Family Method is used in Washington.