**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Marriage of:

ROBERT DAVID WOOD,

    Appellant/Cross-Respondent,

and

ANGELINA EVERENE WOOD,

    Respondent/Cross-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 79095-1-I

UNPUBLISHED OPINION

FILED: March 4, 2019

DWYER, J. — Robert Wood appeals from the decree dissolving his 16-year marriage to Angelina Wood. He challenges the trial court's award of maintenance, order of child support, and award of attorney fees. Angelina, in a cross-appeal, contends that the trial court erred in refusing to impute a higher income to Robert.[1] We affirm.

I

Robert and Angelina were married in March 1998 and separated in July 2014. They have three children who were 19, 14, and 12 years of age at the time of trial.

Robert, who was 47 at the time of trial, earned a bachelor's degree from Oregon State University in 1991. He then served for 20 years as an officer in the

---

[1] For ease of reference, we refer to the parties by their first names.

United States Navy. Robert retired from the Navy in 2011 with a monthly pension of $3,386.23 and a monthly disability award of $1,845.13.

Following his retirement from the military, Robert took a job as a systems engineer project manager in California, earning $131,000 annually. In July 2013, he quit this job in order to return to Washington "and be closer to the kids." He returned to Washington in January or February 2014. At some point after the parties separated in July 2014, Robert took a job as a coach operator for Intercity Transit. At the time of trial, he was earning $20.39 per hour.

Angelina, who was 43 at the time of trial, had cared for the parties' children and had not worked outside of the home for most of the marriage. After earning a high school diploma, and prior to the marriage, she worked full time at a restaurant, earning minimum wage. Once married, she worked sporadically, including seven or eight months in 2001 and another six months prior to the birth of their second child in 2003. Angelina started working as a paraeducator for the North Thurston School District in September 2016. At the time of trial, she was earning $1,704.55 per month.

On October 10, 2014, Robert filed a petition for dissolution in Thurston County Superior Court. He asked the trial court to divide the parties' property, requested that spousal maintenance not be ordered, and sought a parenting plan and child support order for their children—who were then ages 16, 11, and 9.

On September 15, 2015, a court commissioner entered temporary orders requiring Robert to pay Angelina $2,750 per month for maintenance, $1,573.15 per month for undifferentiated child support, and $5,000 for attorney fees.

The two-day dissolution trial commenced in April 2017. Both parties were represented by counsel and testified at trial. Following trial, and after three subsequent presentation hearings, the trial court entered findings of fact and conclusions of law, a decree of dissolution, an order of child support, and a parenting plan. Both Robert and Angelina now appeal.

II

Robert first challenges the maintenance award. The trial court ordered maintenance of $2,750 per month for four years. Robert points out that the amount of maintenance, combined with other amounts he is required to pay, leaves him with roughly $1,678.64 per month to meet his basic expenses and other financial obligations. He argues that this clearly shows that the trial court failed to consider the required statutory factors in determining maintenance.

It is within the trial court's discretion to award maintenance based on the factors enumerated in RCW 26.09.090. The nonexclusive list of factors includes: (a) the financial resources of the party seeking maintenance; (b) the time necessary for the maintenance seeker to become employed; (c) the marital standard of living; (d) the marriage's duration; (e) the maintenance seeker's age, physical and mental conditions, and financial obligations; and (f) the ability of the maintenance payer to meet his or her needs in addition to those of the maintenance seeker. RCW 26.09.090(1). The primary consideration in awarding maintenance is the parties' economic positions following the dissolution. In re Marriage of Spreen, 107 Wn. App. 341, 349, 28 P.3d 769 (2001).

There is no entitlement to maintenance under RCW 26.09.090. In re Marriage of Irwin, 64 Wn. App. 38, 55, 822 P.2d 797 (1992). When a trial court awards maintenance, it has considerable discretion as to the amount and duration of the award. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). There is no uniform standard for determining the proper duration of a maintenance award. Rather, maintenance awards are "flexible tool[s] by which the parties' standard of living may be equalized for an appropriate period of time." In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). While a trial court must consider all the factors set forth in RCW 26.09.090 when setting the amount and duration of a maintenance order, it may assign whatever weight it deems appropriate to each factor. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990) ("The only limitation on amount and duration of maintenance" is that "the award must be just."). The spouse who challenges the decision bears the heavy burden of showing an abuse of discretion by the trial court. In re Marriage of Zahm, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999).

A

Robert argues that the trial court improperly required him to pay $1,200 more in maintenance than he was required to pursuant to the pretrial temporary orders. He is incorrect.

First, the additional $1,200 Robert was ordered to pay was, in fact, the marital portion of his monthly military retirement that *he proposed Angelina*

*receive.*[2] It was a property award, not an additional maintenance award.

Second, Robert relies too heavily on the temporary maintenance order and treats it as a foundation upon which the trial court must rest its final order. But, he cannot rely on the temporary maintenance order in such manner without violating the statutory mandate that temporary maintenance orders: "(a) Do[ ] not prejudice the rights of a party . . . to be adjudicated at subsequent hearings in the proceeding; (b) May be revoked or modified; [and] (c) Terminates when the final decree is entered." RCW 26.09.060(10).

## B

Robert contends that, because the maintenance awarded amounts to 44 percent of his current monthly net income, the trial court failed to properly consider the RCW 26.09.090 factors. We disagree.

The record shows that the trial court, indeed, considered all of the statutory factors in making its maintenance award. First, the trial court considered Angelina's financial resources. It noted that, during the marriage, Angelina was a stay-at-home spouse with very limited employment history. Angelina testified to having $17,000.00 in outstanding credit card debt, making loan payments for two vehicles, operating at a monthly household deficit, and her inability to meet the financial needs of her family without maintenance.

---

[2] Robert also asks that the marital portion of his military retirement awarded to Angelina, as well as the survivor benefit designation associated with this retirement, be reversed. Reversal is required, he argues, because Angelina failed to request them and the trial court never divided this asset. This argument has no merit. At trial, Robert proposed that Angelina "would get her marital share" of the military retirement, which he approximated to be "a little over $1,230."

Second, the trial court considered the amount of time it would take for Angelina to acquire sufficient education to obtain better employment to support the family. It determined that Angelina, who had only a high school diploma and virtually no work history, would need "about four years to complete schooling for [a bachelor's] degree, maybe longer."

Third, the trial court heard testimony about the family's standard of living during the marriage and determined the parties' standard of living to be "quite good, even though there was only one wage earner in the family during their time together." For instance, Robert's gross income in 2012 and 2013 was $166,200 and $116,504. During the marriage, the parties owned eight vehicles, maintained multiple residences, owned a timeshare in Palm Springs, and had relatively little debt. Their children were also involved in various sports, school events, and religious and other activities.

Fourth, the parties were married for more than 16 years before separating. During this time, by the parties' agreement, Angelina sacrificed her earning potential for the purpose of raising their children.

Fifth, there was no evidence introduced that any physical or mental condition hindered Angelina's earning potential. However, the trial court did note that both Robert and Angelina have "quite a number of years ahead of them" that "they have to work."

Lastly, the trial court considered Robert's ability to pay the maintenance award. At trial, Robert neither claimed nor introduced evidence of any purported inability to satisfy maintenance, child support, and other financial obligations.

Based on the information it had considered, the trial court determined that "the evidence showed and proved that the father had significantly more resources available to him, including his ability, if he chooses, to earn a significant income." While the trial court did not deem Robert to be voluntarily underemployed, we cannot say, based on this record, that the trial court abused its discretion in taking Robert's earning potential into consideration.

In sum, the trial court's award of maintenance reflects consideration of the appropriate statutory factors and Robert fails to establish an abuse of discretion.

C

Robert also asserts that the trial court did not consider the uneven distribution of the marital assets in determining the maintenance award. Robert received less than 50 percent, while Angelina received more than 50 percent, of the marital assets.[3]

A trial court has broad discretionary power in making a division of the property and debts of divorcing spouses. In re Marriage of Nicholson, 17 Wn. App. 110, 118, 561 P.2d 1116 (1977). Thus, a decision of the trial court will be reversed only for a manifest abuse of discretion. In re Marriage of Monkowski, 17 Wn. App. 816, 817, 565 P.2d 1210 (1977). The essential consideration is whether the final distribution is fair, just, and equitable under the circumstances. RCW 26.09.080. Factors to be considered are (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the

---

[3] The parties disagree about the percentage of marital assets each was awarded— Robert contends he received 42 percent of such property to Angelina's 58 percent; Angelina claims she received 54.4 percent of such property to Robert's 45.6 percent.

duration of the marriage, and (4) the economic circumstances of the parties. RCW 26.09.080. A trial court is not obligated to make an equal division of property. Rogstad v. Rogstad, 74 Wn.2d 736, 737-38, 446 P.2d 340 (1968) (quoting DeRuwe v. DeRuwe, 72 Wn.2d 404, 408, 433 P.2d 209 (1967)).

Here, both parties proposed that Angelina receive a disproportionate share of the property. The trial court agreed with the parties and found that a "disproportionate share of property being awarded to" Angelina was "fair and equitable" in this case. The record, therefore, does not support Robert's argument that the trial court failed to take the disproportionate distribution of the parties' property into consideration.

D

Robert claims that the trial court erred in requiring him to obtain a life insurance policy as security for his maintenance obligation. The trial court ordered him to obtain a life insurance policy that could "be reduced annually as maintenance reduces." He primarily argues that the life insurance requirement should be reversed because the trial court did not announce it during its oral ruling, but included the requirement in the dissolution decree.

An inconsistency between a trial court's oral rulings and its subsequent, written final order does not, alone, constitute error. This is so, as noted decades ago, because "a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time" and that "[i]t is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned" and "has no final or binding effect, unless formally incorporated into

the findings, conclusions, and judgment." Ferree v. Doric Co., 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963).

That said, we cannot say that the trial court abused its discretion in requiring Robert to obtain life insurance as security for his maintenance obligation.

E

Next, Robert contends that the trial court committed error when it refused to assign either party the debt associated with a Chase credit card. This is incorrect. The Chase credit card was issued in Robert's name after separation, and the trial court ordered that he "must pay the debts that are now in his name." This credit card falls within the category of debts in his name.

He also claims that the Chase credit card debt should have been assigned to Angelina because, he asserts, it is undisputed that Angelina incurred the debt owing on this credit account. Moreover, this credit card debt was purportedly identified in trial Exhibit 27 and the evidence shows that Angelina's friend was making monthly payments on this card. There is no support for this claim in the record. Trial Exhibit 27 does not show any Chase credit card debt. Nor did Angelina acknowledge incurring debts on the Chase account as she did in accepting responsibility for $17,000 of charges on a Discover credit card.

III

Both parties challenge aspects of the order of child support. That order requires Robert to pay $1,071.08 per month for the parties' two younger children, as well as his proportionate share of uninsured medical expenses and

extracurricular activities. It also orders Robert to pay postsecondary costs and expenses.

In Washington, child support obligations are calculated according to the statutory support schedule. See RCW 26.19.020. The main purpose of the child support schedule is to ensure that children are protected with adequate, equitable, and predictable child support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001.

We review a child support order for abuse of discretion. In re Marriage of Bell, 101 Wn. App. 366, 370-71, 4 P.3d 849 (2000). We review a trial court's findings to determine whether they are supported by substantial evidence. In re Marriage of Shellenberger, 80 Wn. App. 71, 80-81, 906 P.2d 968 (1995). We do not review the trial court's credibility determinations, nor do we weigh conflicting evidence. In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

A

Robert contends that the trial court erred in determining his income, for purposes of calculating child support, because it failed to deduct mandatory taxes to derive his net income.

The trial court's determination of Robert's monthly net income was within the range of the evidence presented. For instance, one of Robert's pay stubs from January 2017 shows a monthly net of $3,410.04, at a rate of $19.03 per hour. At trial, he testified to earning $20.39 per hour, which would result in a higher monthly net income. However, in the final order, Robert's income was reflected to be $3,298 per month, with a notation that his "taxes are calculated

based upon single with 2 exemptions." "If a trial court's finding is within the range of the credible evidence, we defer." In re Marriage of Rockwell, 141 Wn. App. 235, 248, 170 P.3d 572 (2007) (citing In re Marriage of Sedlock, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993)).

B

Both Robert and Angelina claim that the trial court failed to properly impute income to the other party.

Here, the trial court did not impute a higher income to Robert than he was actually earning, but imputed Angelina's part-time earnings to full time. Nor did it find that Robert was voluntarily underemployed:

> With respect to income for child support and other purposes, the court is going to use the parties' actual full-time income, plus the father's retirement income. I want to say that I can appreciate Angelina's frustration with the court using the lower amount for Robert; however, there was no evidence presented at trial that he's voluntarily underemployed for purposes of not paying an appropriate amount of support. He works full time.

At trial, Angelina was earning $1,704.55 gross per month, based on working a 32.5-hour week during the school year. The trial court imputed income to her at $2,099.07, which is the equivalent of Angelina working a 40-hour week during the same period. Robert argues that public records and records from Angelina's employer indicate a higher income for paraeducators. Based on the record, we conclude that the trial court's determination of Angelina's full-time income was within the range of credible evidence. Rockwell, 141 Wn. App. at 248.

Regarding Angelina's claim that Robert was voluntarily underemployed, we agree with the trial court. No evidence was introduced in the record to

establish that Robert took a lower paying job for the purpose of avoiding paying appropriate child support.[4] The record shows that Robert left his high paying job in California to return to Washington and his departure from that position occurred more than a year before the dissolution proceeding commenced.

C

Robert contends that the trial court erred in requiring him to pay his proportionate share of the children's extracurricular activity expenses.

Expenses such as health care and extracurricular activities are not included in the basic child support obligation. See RCW 26.19.080(2), (3). A trial court has the discretion to determine the necessity and reasonableness of these expenses. RCW 26.19.080(4). However, if such expenses are awarded, they must be shared by the parents "in the same proportion as the basic child support obligation." RCW 26.19.080(3); In re Yeamans, 117 Wn. App. 593, 599-600, 72 P.3d 775 (2003). This language is mandatory and generally allows no room for the court's exercise of discretion. In re Marriage of Scanlon, 109 Wn. App. 167, 181, 34 P.3d 877 (2001).

---

[4] Imputation of income, for purposes of child support calculations, is governed by RCW 26.19.071(6), which states in pertinent part:

> The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds that the parent is voluntarily underemployed *and finds that the parent is purposely underemployed to reduce the parent's child support obligation.*

(Emphasis added.)

Here, the trial court ordered the parties to pay for the children's uninsured medical expenses and extracurricular activities in the same proportion as set forth in the basic child support obligation. The trial court did not err in making this determination.

D

Robert argues that the trial court lost jurisdiction to award postsecondary support to A.W. and that the court had no basis from which to determine the amount of support it ordered.[5]

A trial court has broad discretion to set the amount of postsecondary support with reference to the child's needs, and we will not overturn that amount absent an abuse of discretion. In re Marriage of Kelly, 85 Wn. App. 785, 792-93, 934 P.2d 1218 (1997). Robert contends that the trial court failed to apply RCW 26.19.090 to determine whether he had an obligation to pay postsecondary expenses. The parameters of an order for postsecondary support are set forth in RCW 26.19.090(2), which provides:

> When considering whether to order support for postsecondary educational expenses, the court shall determine whether the child is in fact dependent and is relying upon the parents for the reasonable necessities of life. The court shall exercise its discretion when determining whether and for how long to award postsecondary educational support based upon consideration of factors that include but are not limited to the following: Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources.

---

[5] Although the child support order requires Robert to provide postsecondary support to all three children, his appeal pertains only to A.W.

Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together.

In determining whether a child support order authorizes postsecondary support, we look to see if the support-paying parent has notice that the support obligation will extend past the age of majority. In re Marriage of Cota, 177 Wn. App. 527, 534, 312 P.3d 695 (2013). Here, postsecondary support was reserved in a temporary order entered in 2015. "[B]y referencing postsecondary educational support and reserving ruling for a future date, the order put the parents on notice that their support obligations could continue past the age of majority." Cota, 177 Wn. App. at 535. Because the dissolution petition commenced in 2015 and A.W. did not reach the age of majority until April 2016, the trial court retained jurisdiction to make a postsecondary award as to that child.

There is evidence in the record revealing that the trial court was presented with sufficient information to evaluate the RCW 26.19.090 factors. The trial court addressed these factors in its oral ruling:

> With respect to postsecondary support, there's unrefuted evidence that the history of this family was that the parents would pay for college for their children. Angelina testified, and it wasn't refuted, that, in fact, the parties saved by agreement about $100 a month for many years for that purpose, and that, at some point, Robert unilaterally stopped making that payment and that Angelina wasn't informed of that. There's unrefuted evidence as well that [A.W.] is still dependent on her mother and that she is attending college full time. The court acknowledges that there was not a whole lot of testimony about it, but it was unrefuted by Robert.

The trial court's oral ruling found postsecondary support for all children to be appropriate for this family and that the parties will pay in proportion to their incomes set forth in the child support order.

The final order of child support indicates that Robert "has agreed to allow" A.W. to use his GI Bill.[6] That order further states: "For year 2 and beyond, the father shall pay $700 per month in post secondary support for [A.W.]. This amount shall be waived if father continues to allow [A.W.] to use his GI Bill."

Reviewing the record, it appears that the trial court based its $700 per month postsecondary support award on the approximate amount that Robert unilaterally withheld in child support payments to A.W. once she reached the age of majority. The trial court's oral ruling stated that: "[T]he child support amount of 770, whatever it was that was deducted by the father will be paid to the mother."

Initially, according to the trial court's oral ruling, Robert was only required to pay postsecondary support when A.W. was at home with Angelina and not at school.[7] However, the final order indicates postsecondary support is required monthly regardless of where A.W. happens to be. Although Robert argues this change constitutes error, we again note that "[u]ntil final judgment is entered, the trial judge is not bound by a prior expressed intention to rule in a certain manner." DGHI Enters. v. Pac. Cities, Inc., 137 Wn.2d 933, 944, 977 P.2d 1231 (1999).

---

[6] The Post-9/11 Veterans Educational Assistance Act of 2008, also known as the "GI Bill," went into effect in August 2009. See 38 U.S.C. § 3001 et seq. Under this act, Robert is entitled to tuition assistance, a stipend for each semester's books, and a monthly housing stipend if he chooses to pursue an education. 38 U.S.C. § 3313(c)(1). Also, this act authorizes Robert to transfer up to 36 months of his benefits to his eligible dependent children. 38 U.S.C. § 3319(c)(2), (d).

[7] For instance, the trial court's oral ruling instructed: "The GI Bill payments will go directly to the school. The [postsecondary] child support amounts in addition to that will be only for the months, whether it's a full or partial month, that [A.W.] is actually at home with the mother."

Based on the record before us, we do not view the trial court's postsecondary award as an abuse of discretion.

IV

Robert also challenges judgments that the trial court entered with the dissolution decree and child support order.

The trial court entered judgment against Robert in the amount of $2,534.51 with the dissolution decree and in the amount of $2,400 with the child support order. Pursuant to the temporary order, Robert was required to pay monthly maintenance of $2,750 and $1,573.15 in undifferentiated child support for all three children. Despite this, in January 2017, Robert unilaterally—without seeking to modify the temporary orders—started deducting insurance, car loan, and cell phone payments from the maintenance owed to Angelina and, in June 2016, he started deducting between $700 and $770 from his monthly child support payment when A.W. graduated from high school.

At the conclusion of trial, the court awarded Angelina $10,000 for a portion of her attorney fees and ordered Robert to pay $2,100 to Angelina for child support he still owed after unilaterally deducting $700 a month for A.W.

Following the April 2017 trial, and prior to entry of the final orders, Robert paid Angelina $10,000 and $1,540 for the purpose of satisfying the attorney fee award and back-owed child support. Meanwhile, Robert owed continuing maintenance and child support obligations. During the presentation hearing, it was unclear to the trial court whether, despite his posttrial payments, Robert was current with his maintenance and child support. Angelina submitted a declaration

clarifying Robert's payments toward arrearages and remaining balances owed to Angelina. The trial court accepted Angelina's figures and entered judgment accordingly. The trial court did not abuse its discretion in doing so.

V

Lastly, Robert asserts that the trial court erred by granting Angelina's request for an award of attorney fees and costs. He claims that the trial court failed to articulate an adequate basis for the award of attorney fees of $10,000 and failed to weigh his ability to pay such amounts.

Whether an award of attorney fees and costs should be allowed in a dissolution proceeding, and the amount thereof, is a matter within the sound discretion of the trial court. In re Marriage of Thomas, 63 Wn. App. 658, 671, 821 P.2d 1227 (1991). Pursuant to RCW 26.09.140,[8] the trial court has discretion to award attorney fees and other costs of litigation when one party has a financial need for an award and when the other party has the ability to pay. The purpose of the statutory authority is to ensure that a person is not deprived of his or her day in court by reason of financial disadvantage. Malfait v. Malfait, 54 Wn.2d 413, 418, 341 P.2d 154 (1959).

In determining whether a party has a need for fees, the trial court may consider such factors as the employment and health of that party, as well as the division of property between the parties. Bennett v. Bennett, 63 Wn.2d 404, 414-15, 387 P.2d 517 (1963).

---

[8] RCW 26.09.140 provides: "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees."

Here, after taking into consideration the parties' income disparities, the trial court awarded Angelina her attorney fees:

> I'm going to order that the father contribute to the mother's fees based on her need and his ability to pay. The mother testified she incurred well over $16,000 in attorney's fees, and I'm assuming that didn't include trial. I'm going to order that the father contribute to her fees in the amount of $10,000. I'm not ordering anything based on intransigence.

At trial, Angelina testified to having incurred between $23,000 and $24,000 in legal fees. Considering the substantial amount of fees Angelina incurred, combined with the fact that the trial court required Robert to pay only a fraction of that amount, we conclude that the trial court did not abuse its discretion.

VI

Both parties seek attorney fees on appeal under RAP 18.1 and RCW 26.09.140. Although Angelina largely prevails, we cannot say that Robert's appeal was completely devoid of merit. In re Marriage of Schumacher, 100 Wn. App. 208, 217, 997 P.2d 399 (2000) (appeal is frivolous if it presents no debatable issues upon which reasonable minds could differ and there is no possibility of reversal). Nor do we believe that RCW 26.09.140 calls for an award of fees in this matter.[9] Accordingly, we exercise our discretion and deny the parties' request for attorney fees on appeal.

---

[9] Angelina's motion to strike Robert's financial declaration is denied.

- 18 -

Affirmed.

We concur: